Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:  (907) 793-2200
Fax:    (907) 793-2299
E-mail: gzipkin@guessrudd.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF ILLINOIS,<br><br>   Plaintiff,<br><br>vs.<br><br>ZACHARY PUTMAN,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 3:06-cv-00050 TMB<br>)<br>) |

MEMORANDUM IN SUPPORT OF
<u>SAFECO'S MOTION FOR SUMMARY JUDGMENT</u>

<u>Introduction</u>

   This case involves a coverage dispute with respect to an automobile liability policy issued by Safeco Insurance Company of Illinois ("Safeco") to Ivan Basargin and Poluheria Basargin, insuring one of five automobiles they owned.  Their adult son, Vasily Basargin, was driving a different vehicle owned by Ivan and Poluheria Basargin, and insured under a separate automobile liability policy issued by Safeco, when he struck and injured Zachary Putman, causing injuries to Mr. Putman.  Mr. Putman has

since recovered damages under the Safeco policy insuring the accident vehicle.

Mr. Putman is not entitled to recover damages under the second Safeco policy because that policy unambiguously and expressly excludes liability coverage resulting from the ownership, maintenance and use of any vehicle owned by the named insureds other than the vehicle identified as the covered automobile in that policy.  It is undisputed (1) that Mr. Basargin was operating a 1992 Chevrolet pickup truck at the time of the accident, (2) that the pickup truck in question was insured under Safeco Policy No. H1841365 ("Auto Policy One"), and (3) that the only vehicle insured under Safeco Policy No. H1841823 ("Auto Policy Two") was a 1996 Subaru that was <u>not</u> involved in the accident in question.[1]

### Statement of Facts

On July 6, 2005, Vasily Basargin was involved in an automobile accident with Zachary Putman at or near the intersection of Northern Lights Boulevard and Boniface Parkway in Anchorage, Alaska.  Ex. 4, p. 1.  At the time of the accident, Vasily Basargin was driving a 1992 Chevrolet pickup owned by his parents, Ivan and Poluheria Basargin.  <u>Id</u>.

---

[1] The existence of two separate Safeco policies is purely the result of a Safeco underwriting policy that limits the number of vehicles on any one personal automobile policy to four.  <u>See</u> Affidavit of Joseph Helensky, Exhibit 3, ¶¶ 2-4.

Ivan and Poluheria Basargin are the named insureds on two Safeco insurance policies which were in effect on July 6, 2005. See Exhibits 1 and 2. Auto Policy One provides coverage for four vehicles owned by Ivan and Poluheria Basargin, including the 1992 Chevrolet pickup that Vasily Basargin was driving at the time of the accident. Ex. 1, p. 4. Auto Policy Two provides coverage for a single vehicle - a 1996 Subaru Legacy - also owned by Ivan Basargin and Poluheria Basargin. Ex. 2, p. 10. Safeco's underwriting guidelines permit a maximum of four vehicles to be insured on a single policy. Ex. 3, ¶ 2. Thus, when Ivan and Poluheria Basargin sought insurance for five vehicles, two separate policies were issued. Ex. 3, ¶ 4. Both policies provide the identical policy limits and multi-car discounts. Ex. 1, p. 5; Ex. 2, p. 10.

Zachary Putman sued Vasily Basargin, Ivan Basargin and Poluheria Basargin (collectively "the Basargins") in an Alaska Superior Court case captioned <u>Zachary Putman v. Vasily Basargin, Ivan Basargin and Poluheria Basargin</u>, Case No. 3AN-05-10947 Civil ("the state court action") for the injuries he sustained in the automobile accident. Ex. 4, p. 2. Subsequently, a dispute arose between the parties as to whether the Basargins are covered by Auto Policy Two for the claims asserted by Mr. Putman in the state court action. Thus, on March 3, 2006, Safeco filed this action for declaratory relief in U.S. District Court.

Meanwhile, the parties reached a partial settlement whereby Safeco paid Mr. Putman the policy limits under Auto Policy One (in the full amount of $112,500) to resolve Mr. Putman's claims against the Basargins in the state court action. In consideration of that payment, the parties entered into a Partial Settlement Agreement and Release of All Claims ("Settlement Agreement"), a true and correct copy of which is attached hereto as Exhibit 4. Pursuant to the Settlement Agreement, the Basargins assigned to Mr. Putman any rights they had to assert that Auto Policy Two applies to Mr. Putman's claims. Settlement Agreement, Ex. 4, pp. 6-7.

Following execution of the Settlement Agreement, Safeco amended its Complaint for Declaratory Relief to dismiss the Basargins as named defendants. See Amended Complaint for Declaratory Relief, Docket 7; see also Ex. 4, p. 8. Safeco's declaratory relief action seeks a determination by the court of the obligations of Safeco under Auto Policy Two with respect to Mr. Putman's claims against the Basargins.

## Standard of Review

A party is entitled to summary judgment when there are no disputed issues of material fact and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party has the initial burden of showing that there is no genuine dispute as to material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party need not present evidence; it

need only point out the lack of any genuine dispute as to material fact.  Id. at 323-25.  Once the moving party has shown that the case presents no issue of material fact and that the law requires judgment in its favor, the opposing party can avoid summary judgment only by producing competent evidence to show that there are issues of material fact to be tried.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  All evidence by the non-moving party must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-moving party.  Id. at 255.  The non-moving party, however, may not rest upon mere allegations or denials, but must show that sufficient evidence exists to support the claimed factual dispute and that the fact-finder is required to resolve the parties' differing versions of the truth at trial.  Id. at 248-49; FED. R. CIV. P. 56(e).

## Discussion

1. Safeco is Entitled to a Declaratory
   Judgment on the Issue Presented in This Case.

   Safeco is entitled to a judicial declaration that it has no duty to provide coverage under Auto Policy Two for the claims asserted in the state court action by Mr. Putman against the Basargins.  Title 28 of the United States Code creates a declaratory remedy as follows:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Rule 57 of the Federal Rules of Civil Procedure sets forth the procedures for obtaining the relief authorized by 28 U.S.C. § 2201.

> The procedure for obtaining a declaratory judgment pursuant to Title 28, U.S.C., § 2201, shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided by Rules 38 and 39. The existence of another remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar.

Declaratory judgments are appropriate when the court finds that there exists an "actual case or controversy within its jurisdiction." <u>Principal Life Ins. Co. v. Robinson</u>, 394 F.3d 665, 669 (9th Cir. 2005) (citing <u>American States Ins. Co. v. Kearns</u>, 15 F.3d 142, 143 (9th Cir. 1994)). Once the court finds there is a case or controversy, the court must decide whether to exercise its jurisdiction by analyzing the factors set out in <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S. 491 (1942). <u>See</u> <u>Forest Oil Corp. v. Union Oil Co.</u>, 2006 U.S. Dist. LEXIS 23242 at *5 (D. Alaska April 24, 2006). As explained in <u>Forest Oil</u>, the factors to be considered are:

> (1) the district court should avoid needless determination of state law issues; (2) it should discourage litigants from filing declaratory actions as a means of forum shopping; and (3) it should avoid duplicative litigation.

Id. at 672.  Other considerations include:

> Whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems.  In addition, the court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

Id. (citation omitted).  If the court declines to exercise jurisdiction, it must "explain the basis for its decision on the record."  Principal Life Ins., 394 F.3d at 672 (citing Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998)).

In this case, there is a clear dispute about whether Auto Policy Two provides coverage for claims asserted by Mr. Putman against the Basargins arising out of the accident, which involved a vehicle listed only under Auto Policy One.  See Amended Complaint, pp. 4-5; see also Settlement Agreement, Ex. 4, p. 2.  Accordingly, there is a live controversy.

Further, the factors here weigh in favor of the Court retaining jurisdiction and issuing a declaratory judgment. There is no concern here about forum shopping or duplicative litigation since there is no pending or threatened proceeding in state court.[2] The parties have, in fact, expressly agreed that a declaratory judgment action is appropriate. Ex. 4, p. 3 (explaining that parties entered into agreement in part "to provide a mechanism which allows for a judicial determination of whether any of Putman's claims set forth in the civil action are covered by Safeco Policy Two"). Finally, declaratory relief will clearly "clarify the legal relations between the parties." <u>Forest Oil</u>, 2006 U.S. Dist. LEXIS at *8-9. Indeed, Safeco and Mr. Putman have agreed that, should the court find that coverage is afforded under Auto Policy Two, Safeco will pay the limits of Safeco's Auto Policy Two to Mr. Putman. Ex. 4, p. 7. By the same token, should the court determine that no such coverage exists, Mr. Putman has already received the policy limits of the only applicable policy -- Auto Policy One.

    2.   <u>Auto Policy Two Does Not Provide Coverage for the Claims Asserted by Mr. Putman Against the Basargins</u>.

The claims asserted by Mr. Putman are not covered by Auto Policy Two because they are clearly and unambiguously excluded from coverage. Specifically, Exclusion B.2 in the policy provides:

---

[2] In the Settlement Agreement, Mr. Putman agreed to dismiss his claims in the state court action. Ex. 4, p. 6.

> We do not provide Liability Coverage for the ownership, maintenance or use of:
>
> * * *
>
> 2.  Any vehicle, other than **your covered auto**, which is:
>
>     **a.**  owned by you; or
>
>     **b.**  furnished or available for your regular use.

Ex. 2, p. 15 (emphasis in original). Definition K defines "your covered auto" as follows:

> 1.  Any vehicle shown in the Declarations.
>
> 2.  Any of the following types of vehicles on the date you become the owner, whether or operational or not:
>
>     a.  a private passenger auto;
>
>     b.  a pickup or van that:
>
>         (1)  has a Gross Vehicle Weight of less than 10,000 lbs.; and
>
>         (2)  is not used for the delivery or transportation of goods and materials . . .
>
>     c.  a motor home or **trailer**.

Ex. 2, p. 13 (emphasis in original). Definition K further states:

> This provision (K.2.) applies only if you ask us to insure the newly acquired vehicle during the policy period in which it was acquired or within

>  thirty days after you become the owner, whichever is greater.

Id.

It is undisputed that the 1992 Chevrolet truck involved in the accident in question is <u>not</u> listed in the Declarations for Auto Policy Two. Ex. 2, p. 10. The Chevrolet pickup also does not qualify as a "newly acquired" vehicle under K.2. because it was not purchased during the policy period. Indeed, from the commencement of the policy period on both policies, the Chevrolet truck was already insured under Auto Policy One. <u>See</u> Ex. 1, p. 4. Thus, the Chevrolet pickup that Vasily Basargin was driving at the time of the accident was <u>not</u> a "covered auto" under Auto Policy Two and any claims arising out of the accident involving that truck - including claims of negligent entrustment - are not covered under Auto Policy Two.

While no Alaska case directly interprets this particular exclusion, cases from other jurisdictions have consistently upheld this exclusion's validity. For instance, in <u>Grange Ins. Ass'n. v. MacKenzie</u>, 37 Wn.App. 703, 704, 683 P.2d 221, 222 (1984), <u>aff'd</u>, 103 Wash.2d 708, 694 P.2d 1087 (1985), the Washington Court of Appeals found that similar policy language was "**not ambiguous; it is as plain and 'popular' as insurance language can be**. . . ." In <u>The Automobile Ins. Co. of Hartford v. Curran</u>, 994 F.Supp. 324 (E.D. Pa. 1998), a dispute arose over an accident involving one of 20 vehicles owned by an

insured.  The injured party there, as here, argued that coverage should be afforded under a policy listing several other vehicles owned by the insured, but not the vehicle involved in the accident.  <u>Id</u>. at 327.  While the issues in that case centered on what actually constituted "ownership" and "regular use" of a vehicle, the court specifically addressed the question of whether there was any ambiguity in the exclusion itself.  Citing prior Pennsylvania cases and cases from other jurisdictions, the court noted that it had found no case in which the exclusion had been found to be ambiguous.  <u>Id</u>. at 329-30.  Accordingly, the unambiguous exclusion was applied "in the context of its plain and ordinary meaning."  <u>Id</u>. at 330.

     Mr. Putman will no doubt argue that his claim should be covered under Auto Policy Two because the policy language is somehow vague.  The language itself is not vague, as discussed above.  Finding an ambiguity in this rather straightforward language would require the court to disregard the most basic principles of policy interpretation.  First, it is well-established that "when a court construes an insurance contract, it must consider the contract in its entirety."  <u>Bering Strait Sch. Dist. v. RLI Ins. Co.</u>, 873 P.2d 1292, 1299 (Alaska 1994).  Insurance policy terms should be interpreted in their ordinary and popular sense, as they would be read and understood by a person of average intelligence and experience.  <u>See</u> <u>Jarvis v. Aetna Cas. and Sur. Co.</u>, 633 P.2d 1359, 1363 (Alaska 1981).  Further, "[w]hen an insurance company by plain language limits

the coverage of its policy, [the court] recognize[s] that restriction." C.P. ex rel. M.I. v. Allstate Ins. Co., 996 P.2d 1216, 1222 (Alaska 2000).

In this case, when the coverage provisions, definitions and exclusions sections are read together and interpreted in their ordinary and popular sense, it is clear that Auto Policy Two does not afford coverage for Mr. Putman's claims for the simple reason that those liability claims arise out of an accident that occurred from the ownership and use of a truck not covered under Auto Policy Two.  A reasonable insured would not read Auto Policy Two as providing liability coverage for an accident involving a vehicle insured under Auto Policy One.  The policy language clearly excludes claims for vehicles owned by the named insureds, but not insured under that policy.

Mr. Putman mistakenly believes that simply because the Basargins had two policies, his claims should be covered under both those policies.  However, the only reason two separate policies were issued is because Safeco's underwriting guidelines only permit a maximum of four vehicles to be insured under a single policy.  See Ex. 3, ¶¶ 2-4.  Thus, Safeco was required by its underwriting guidelines to issue two separately numbered policies.  Id.  The fact is, both policies provide identical coverage and Policy Two shows that a multi-car discount has been applied, even though Policy Two lists only one vehicle.  See Ex. 1, p. 5; Ex. 2, p. 10.  No reasonable lay insured would expect

that liability coverage would exist under Policy Two for a vehicle accident involving one of the vehicles listed under Policy One.

Any argument Mr. Putman may advance to the effect that the exclusion in Auto Policy Two does not apply because this case involves a claim of negligent entrustment is similarly without merit.  The plain language of the policy demonstrates that liability coverage does not apply to a claim arising out of an auto accident involving the use of a vehicle not covered by the policy.  See Insuring Agreement and Exclusions, Ex. 2, pp. 14-15.

Any liability arising out of the operation of a motor vehicle owned by the named insureds but not covered under Auto Policy Two was a risk not covered by that policy.  Mr. Putman cannot escape that expressly excluded risk and turn it into a covered loss simply by asserting a negligent entrustment theory against the named insureds.  This is especially true where, as here, the policy broadly excludes liability coverage "for the ownership, maintenance or use" of "[a]ny vehicle, other than **your covered auto**, which is . . . owned by you."  Ex. 2, p. 15 (Exclusion B.2.).

The negligent entrustment claim against Ivan and Poluheria Basargin did arise out of their ownership of a vehicle **other than** the one insured under Auto Policy Two; namely, the 1992 Chevrolet pickup insured under Auto Policy One.  The

exclusion quoted above is comprehensive enough to encompass any negligent entrustment claim against Vasily's parents.

## Conclusion

This case is appropriate both for declaratory relief and summary judgment. The relevant factors weigh in favor of the court retaining jurisdiction and issuing a declaratory judgment and there are no disputed issues of material fact.

The plain language of the Safeco policy at issue makes it clear that there is no coverage under Auto Policy Two for Mr. Putman's claims against the Basargins. The vehicle Vasily Basargin was driving was <u>not</u> a covered auto under Auto Policy Two. As such, all liability claims arising from this accident are not covered Auto Policy Two, since that policy unambiguously excludes coverage for claims arising out of the ownership, maintenance or use of vehicles other than a covered auto.

For the foregoing reasons, the court should grant Safeco's motion for summary judgment, and enter a judgment declaring that the claims asserted by Mr. Putman are not covered under Auto Policy Two.

```
                DATED at Anchorage, Alaska, 5th day of July, 2006.

                          GUESS & RUDD P.C.
                          Attorneys for Plaintiff


                     By:      s/Gary A. Zipkin
                          Guess & Rudd P.C.
                          510 L Street, Suite 700
                          Anchorage, Alaska  99501
                          Phone: 907-793-2200
                          Fax:   907-793-2299
                          Email: gzipkin@guessrudd.com
                          Alaska Bar No. 7505048
```

CERTIFICATE OF SERVICE

I hereby certify that on the
5th day of July, 2006, a copy
of the foregoing document was served
electronically on:

    Elliott T. Dennis, Esq.

Guess & Rudd P.C.


By:   s/Gary A. Zipkin
F:\DATA\5500\1771\pleading\06 MSJ.doc