# AFFIDAVIT

State of Indiana

County of Marion

NAME OF INSURED:    IVAN S BASARGIN
                    POLUHERIA BASARGIN

POLICY NUMBER:      H1841823

POLICY DATES:       01-28-05 TO 07-28-05

Deborah Campbell being duly sworn on oath says she is an archivist

of SAFECO Insurance Company of Illinois and that she has compared

the attached copies of the insurance policy number listed above and

endorsements with the original records of the policy of insurance and

endorsements contained in the Company's files and that the same is a

true and exact recital of all the provisions in the said original policy

and endorsements attached thereto.

*Deborah Campbell*

Subscribed and sworn to before me

on March 9, 2006.

*Deborah A Wilhoite*
Notary Public

DEBORAH A. WILHOITE
NOTARY PUBLIC, STATE OF INDIANA
COUNTY OF RESIDENCE: BOONE
MY COMMISSION EXPIRES MAY 30, 2010

**100023**

EXHIBIT 2
Page 1 of 31

**SAFECO INSURANCE COMPANY OF ILLINOIS**
P O BOX 34920, SEATTLE, WA 98124

S & H INC
ASSOCIATED INSURANCE SERVICES
7125 OLD SEWARD HIGHWAY #203
ANCHORAGE    AK   99518-2282

DECEMBER 26, 2004

**POLICY NUMBER:** H1841823

**AGENT TELEPHONE:**
(907) 349-2229

**IDENTIFICATION CARDS ENCLOSED**

IVAN S BASARGIN
POLUHERIA BASARGIN
PO BOX 2542
HOMER AK  99603-2542

Thank you for allowing us to serve your auto insurance needs.   We appreciate your business and the trust that you have placed in us.   We would like to remind you that it is now time to renew your Automobile policy.

Your new policy period begins January 28, 2005.

The renewal premium for this policy is $395.20.   The billing for this amount will be explained on the next statement for your monthly account number 7221-1841365.   A $305.82 payment for the outstanding bill on your account is due on December 28, 2004.

We value your timely payment.   Late payments, dishonored checks, and insufficient bank funds mean additional administrative costs.   Effective February 28, 2004 we will charge a late fee and a returned bank item fee to help offset the extra processing costs associated with late and returned items.

Your billing statement provides further details of the new fees and of the billing plans available to you.   You can avoid late payments with the checkless payment plan, which offers the convenience of monthly deductions that can be scheduled any day of the month you like.

If you have any questions or wish to make a change to your policy, please call:   (907) 349-2229.

Please note:   The enclosed vehicle ID cards are proof of insurance to be kept in your vehicle.   In an effort to reduce the number of documents sent to you, we will no longer be issuing wallet cards. The vehicle ID cards contain all the contact information you will need regarding your insurance.

Personal Lines Underwriting

EXHIBIT 2
Page 2 of 31

**100024**

**IMPORTANT NOTICE**
## CHANGES IN AVAILABLE LIMITS OF INSURANCE

With this renewal we are revising the maximum policy limits available in Alaska. When we sell coverage we will not offer limits above these maximum limits. If you had a coverage listed below with limits higher than the new maximum limits, we are offering you the new limits with this renewal. Please review the enclosed Declarations page for a list of your coverages and limits. The following is not an indication of coverage.

| | |
|---|---|
| Bodily Injury | $500,000 per person/$500,000 per accident |
| Medical Payments. | $ 25,000 per person |
| Uninsured Motorists Property Damage | $100,000 per accident. |

In addition, if your policy previously had one or more vehicles that carried Uninsured Motorists Property Damage Coverage, the coverage has been added to all of your covered autos at the same limit. If you do not want Uninsured Motorists Coverage Property Damage on all of your covered autos, please contact your agent and have the coverage removed from your policy. You must have the coverage on either all of your covered autos or none of your covered autos.

If you previously purchased the optional coverages Auto Death Indemnity or Total Disability, we no longer offer those coverages in Alaska. With this renewal, those coverages are no longer applicable to your policy.

If you prefer amounts other than those listed on your Declarations page, please contact your agent. By paying your renewal bill by the due date, you are accepting the policy limits and coverages listed on your Declarations page.

SA-2606/AKEP 11/04

**100025**

EXHIBIT 2
Page 3 of 31

**IMPORTANT NOTICE**

**CHANGE IN AVAILABLE DEDUCTIBLES**

With this renewal we are standardizing the deductibles available in Alaska. If you previously selected a deductible that is no longer offered, we are offering you new deductible limits listed at this renewal. **Please see your enclosed Declarations page for a list of your coverages, limits and deductibles.** The following is NOT an indication of coverage.

Policies with prior Comprehensive deductibles of $0 or $50 have change to a Comprehensive deducible of $100.

Policies with prior Comprehensive deductibles of $200 have changed to a Comprehensive deductible of $250.

Policies with prior Collision deductibles of $0, $50 or $200 have changed to a Collision deductible of $250.

By paying your renewal bill by the due date, you are accepting the deductibles listed in your Declarations page.

If you have any questions concerning deductible changes or any other insurance matter, please contact your Safeco agent. Your agent's name and telephone number are listed on the enclosed Declarations page.

SA-2609/AKEP 11/04

**100026**

EXHIBIT 2
Page 4 of 31

# MOTOR VEHICLE ACCIDENT PREVENTION COURSE DISCOUNT

Alaska law requires that an automobile insurance premium reduction be given to eligible persons who have successfully completed a motor vehicle accident prevention course approved by the Department of Public Safety within three years preceding the request for the discount. A course which is taken and completed as a result of an order or sentence imposed by a court may not satisfy this requirement. Eligible persons are those who:

- Are 55 years of age or older.

- Have no chargeable accidents.

- Have no moving motor vehicle citation within three years preceding the request for the discount.

The 5% discount applies:

- To the auto principally operated by the person with the course completion certificate.

- Once to each auto regardless of the number of persons with the course completion certificate.

- For 36 months from the date of the course.

If you are eligible for this discount, you must ask us to provide the discount at the time of your renewal and provide documentation issued by the sponsor of the motor vehicle accident prevention course that states the date that the course was completed.

SA-2357/AKEP 4/98

100027

EXHIBIT 2
Page 5 of 31



# Consumer Privacy Statement

Safeco and its affiliated companies appreciate the trust you place in us when you ask us to help protect and accumulate your assets. You trust us with your private, personal information when you invest with us or purchase insurance from us. We are committed to protecting your private information. Safeco does not sell information about you to others.

To learn more about how Safeco collects and uses your personal information, please read the following notice.

## Safeco's sources of information about you

We collect personal information about you from:

- The information you provide on applications or other forms (such as your name, address and Social Security number)
- Your transactions with us, our affiliates or others (such as your payment history and claims information)
- The information we receive from a consumer reporting agency (such as your credit history)
- Your insurance agent or financial advisor (such as updated information pertaining to your account)

## Safeco's use of your personal information

We treat your information with respect and concern for your privacy. We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

For example, we may share any or all of your information with our affiliated companies and independent Safeco representatives — Independent Insurance Agents and Financial Advisors authorized to sell Safeco products. We may also disclose any or all information we have collected about you to companies that perform services on our behalf and to other financial institutions with whom we have joint marketing agreements.

When we make this type of disclosure it is done to service your Safeco account or policy, or to inform you about Safeco products and services. Before disclosing your information, we require these companies to promise to keep it confidential and use it only for the transaction we request.

## Independent Safeco Representatives

The Independent Insurance Agents and Financial Advisors authorized to sell Safeco products and services are not Safeco employees and not subject to Safeco's Privacy Policy. Because they have a unique business relationship with you, they may have additional personal information about you that Safeco does not have. They may use this information differently than Safeco. Contact your Safeco agent or advisor to learn more about their privacy practices.

## Information about Safeco web sites

This consumer statement applies to Safeco's web sites. If you have internet access and want more information about our web site specific privacy and security practices, click on the Privacy Policy links on www.safeco.com and www.safecofunds.com.

EXHIBIT __2__    **100028**
Page __6__ of __31__

OC-701/EP 10/03

Safeco® and the Safeco logo are trademarks of Safeco Corporation.

**Protecting your personal information from unauthorized access**

We limit employee access to customer information to those employees with a legitimate business reason for such access. We maintain physical, electronic and procedural safeguards to protect your personal information from being accessed by unauthorized persons.

**Your medical information**

Safeco obtains medical information only in connection with specific products or claims. We will not use or share personally identifiable medical information for any purpose other than the underwriting or administration of your policy, claim or account, or as otherwise disclosed to you when the information is collected.

This privacy statement may be supplemented by privacy laws in your state which may be more protective than federal privacy laws. In that event, we will protect your information in accordance with state law and you will receive an additional notice explaining your state's privacy laws.

**This Privacy Statement applies to the following members of the Safeco family of companies:**

**American Economy Insurance Company**
**American States Insurance Company**
**American States Insurance Company of Texas**
**American States Life Insurance Company**
**American States Lloyds Insurance Company**
**American States Preferred Insurance Company**
**First National Insurance Company of America**
**First Safeco National Life Insurance Company of New York**
**General Insurance Company of America**
**Insurance Company of Illinois**
**Safeco Insurance Company of America**
**Safeco Insurance Company of Illinois**
**Safeco Insurance Company of Indiana**
**Safeco Insurance Company of Oregon**
**Safeco Investment Services, Inc.**
**Safeco Life Insurance Company**
**Safeco Lloyds Insurance Company**
**Safeco National Insurance Company**
**Safeco National Life Insurance Company**
**Safeco Surplus Lines Insurance Company**

Copyright © 2003 Safeco Corporation. All Rights Reserved.

**100029**

EXHIBIT ___2___
Page _7_ of _31_

OC-701/EP 10/03

**IMPORTANT NOTICE**
**CHANGES TO YOUR POLICY**

Enclosed with this renewal is Amendatory Endorsement — Alaska. Please read this endorsement carefully and keep it with your policy.

This endorsement makes several changes to your policy. The changes are highlighted below:

- Uninsured/Underinsured Motorists Coverage was revised to exclude coverage for punitive or exemplary damages. Punitive or exemplary damages are damages awarded to punish or deter wrongful conduct. They are not awarded to cover bodily injury or property damage and therefore are not intended to be covered by insurance. They are not part of the coverage required under Uninsured/Underinsured Motorists Coverage.

- In addition, under Uninsured/Underinsured Motorists Coverage we have revised the Insuring Agreement to include clarification that physical contact must occur if the insured seeks coverage under Uninsured/Underinsured Motorists Coverage and the driver or owner of the uninsured or underinsured motor vehicle is not known.

- Under Part E — Duties In Case of An Accident or Loss we added a requirement that the police or other law enforcement agency be notified within 24 hours of the accident if a hit-and-run driver is involved or as soon as practicable.

This is a summary of the changes. It does not provide or change coverage. If this notice conflicts with the policy, the policy language will prevail.

SA-2628/AKEP 11/04



100030

EXHIBIT 2
Page 8 of 31

# AMENDATORY ENDORSEMENT — ALASKA

It is agreed that the policy is amended as follows:

## DEFINITIONS

The following definition is added and the subsequent definitions re-lettered **J.** through **L.**:

I.    "**Punitive or exemplary damages**" include damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any purpose other than as compensatory damages for **bodily injury** or **property damage.**

## PART C — UNINSURED/UNDERINSURED MOTORISTS COVERAGE

### Insuring Agreement

The second paragraph under **A.** is replaced by the following:

The owner's or operator's liability for these damages must arise out of the **ownership**, maintenance or use of the **uninsured motor vehicle** or **underinsured motor vehicle.** If both the owner and operator of the **uninsured motor vehicle** or **underinsured motor**

SA-2627/AKEP 11/04

**vehicle** are unknown, payment under Uninsured/Underinsured Motorists Coverage shall be made only where direct physical contact between the **insured** and **uninsured motor vehicle** or **underinsured motor vehicle** has occurred.

## Exclusions

The following exclusion is added:

We do not provide Uninsured/Underinsured Motorists Coverage for **punitive or exemplary damages.**

## PART E — DUTIES AFTER AN ACCIDENT OR LOSS

**C.1.** is replaced by the following:

C.    A person seeking Uninsured/Underinsured Motorists Coverage must also:

1.    Report the accident to the police or other civil authority within twenty-four (24) hours or as soon as practicable if a hit-and-run driver is involved.

100031

EXHIBIT    2
Page   9   of   31



**SAFECO INSURANCE COMPANY OF ILLINOIS**
**AUTOMOBILE POLICY DECLARATIONS**

**POLICY NUMBER:** H1841823

**INSURED:**
IVAN S BASARGIN
POLUHERIA BASARGIN
PO BOX 2542
HOMER AK  99603-2542

**RENEWAL**

**POLICY PERIOD FROM:**  JAN. 28 2005
                    **TO:**  JULY 28 2005

at 12:01 A.M. standard time at
the address of the insured as
stated herein.

**AGENT:**
S & H INC
ASSOCIATED INSURANCE SERVICES
7125 OLD SEWARD HIGHWAY #203
ANCHORAGE       AK   99518-2282

**AGENT TELEPHONE:**
(907) 349-2229

| ALL DRIVERS IN HOUSEHOLD | IVAN S BASARGIN, POLUHERIA BASARGIN |
|---|---|
| **RATED DRIVERS** | IVAN S BASARGIN, POLUHERIA BASARGIN |

**1996 SUBARU**    LEGACY L AWD    4 DOOR STATION WAGON    ID# 4S3BK4354T7320645

Insurance is afforded only for the coverages for which limits of liability or
premium charges are indicated.

| COVERAGES | 1996 SUBA LIMITS | PREMIUMS |
|---|---|---|
| **LIABILITY:** | | |
| BODILY INJURY | $100,000 Each Person $300,000 Each Occurrence | $   77.10 |
| PROPERTY DAMAGE | $50,000 Each Occurrence | 60.80 |
| **MEDICAL PAYMENTS** | $25,000 | 18.90 |
| **UNINSURED AND UNDERINSURED MOTORISTS:** | | |
| BODILY INJURY | $100,000 Each Person $300,000 Each Accident | 31.10 |
| PROPERTY DAMAGE | $25,000 Each Accident | 13.70 |
| **COMPREHENSIVE** | Actual Cash Value Less $250 Deductible | 21.80 |
| **COLLISION** | Actual Cash Value Less $250 Deductible | 158.80 |
| **ADDITIONAL COVERAGES:** | | |
| TOWING & LABOR | | 5.00 |
| LOSS OF USE | $22 Per Day/$660 Max | 8.00 |
| | **TOTAL** $ | 395.20 |

CONGRATULATIONS!  YOUR PREMIUM INCLUDES DISCOUNTS FOR:
Multi-Car

100032

EXHIBIT  2
Page 10 of 31

P O BOX 34920, SEATTLE, WA 98124

**DATE PREPARED:** DEC. 26 2004

SA-1697/EP 9/90
G11



# ALASKA PERSONAL AUTO POLICY

SAFECO INSURANCE COMPANY OF AMERICA
FIRST NATIONAL INSURANCE COMPANY OF AMERICA
GENERAL INSURANCE COMPANY OF AMERICA
Home Office: 4333 Brooklyn Ave. N.E., Seattle, Washington 98185
SAFECO INSURANCE COMPANY OF ILLINOIS
Home Office: 2800 W. Higgins Rd., Suite 1100, Hoffman Estates, Illinois 60195
SAFECO INSURANCE COMPANY OF INDIANA
Home Office: 500 North Meridian Street, Indianapolis, IN 46204

(Each a stock insurance company.)

## READY REFERENCE TO YOUR AUTO POLICY

|  | Beginning On Page |
|---|---|
| **AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |
| **PART A — LIABILITY COVERAGE** | 2 |
| Insuring Agreement | |
| Supplementary Payments | |
| Exclusions | |
| Limit of Liability | |
| Out of State Coverage | |
| Financial Responsibility | |
| Other Insurance | |
| **PART B — MEDICAL PAYMENTS COVERAGE** | 4 |
| Insuring Agreement | |
| Exclusions | |
| Limit of Liability | |
| Other Insurance | |
| **PART C — UNINSURED/UNDERINSURED MOTORISTS COVERAGE** | 6 |
| Insuring Agreement | |
| Exclusions | |
| Limit of Liability | |
| Other Insurance | |
| **PART D — COVERAGE FOR DAMAGE TO YOUR AUTO** | 8 |
| Insuring Agreement | |
| Transportation Expenses | |
| Exclusions | |
| Limit of Liability | |
| Payment of Loss | |
| No Benefit to Bailee | |
| Other Sources of Recovery | |
| Appraisal | |
| **PART E — DUTIES AFTER AN ACCIDENT OR LOSS** | 12 |
| **PART F — GENERAL PROVISIONS** | 12 |
| Policy Period and Territory | |
| Changes | |
| Termination | |
| Two or More Autos Insured; | |
|     Two or More Auto Policies | |

100033

EXHIBIT 2
Page 11 of 31

Safeco® and Safeco logo are trademarks of Safeco Corporation

**ADDITIONAL COVERAGES**
Coverage for Damage to a Rental Vehicle - Alaska
Towing and Labor Costs Coverage
Loss of Use Coverage

Beginning
On Page
16

4031X

EXHIBIT ___2___
Page _12_ of _31_

100034

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

**B.** "We," "us" and "our" refer to the Company providing this insurance.

**C.** For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least six months.

Other words and phrases are defined. They are in bold type when used.

**D.** **"Bodily injury"** means bodily harm, sickness or disease, including death that results.

**E.** **"Business"** includes trade, profession or occupation.

**F.** **"Family member"** means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child who is a resident of your household.

**G.** **"Occupying"** means in; upon; or getting in, on, out or off.

**H.** **"Property damage"** means physical injury to, destruction of or loss of use of tangible property.

**I.** **"Rental vehicle"** means a:

1. Private passenger auto;

2. Pickup or van; or

3. Trailer;

rented by you or any **family member** from any person or organization licensed under applicable state laws to engage in the business of renting vehicles to the public while in the custody of or being operated by you or any **family member**. However, a **rental vehicle** does not include any vehicle rented for the regular use of you or any **family member**.

**J.** **"Trailer"** means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup, van or motor home.

It also means a recreational camping vehicle, a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

**K.** **"Your covered auto"** means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner, whether operational or not:

   **a.** a private passenger auto;

   **b.** a pickup or van that:

   **(1)** has a Gross Vehicle Weight of less than 10,000 lbs.; and

   **(2)** is not used for the delivery or transportation of goods and materials unless such use is:

   **(a)** incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

   **(b)** for farming or ranching; or

   **c.** a motor home or **trailer**.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

This provision (K.2.) applies only if you ask us to insure the newly acquired vehicle during the policy period in which it was acquired or within thirty days after you become the owner, whichever is greater.

3. Any **trailer** you own.

4. Any auto or **trailer** you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   **a.** breakdown;

   **b.** repair;

   **c.** servicing;

100035
EXHIBIT 2
Page 13 of 31

d. loss; or

e. destruction.

This provision (K.4.) does not apply to Coverage for Damage to Your Auto.

---

## PART A — LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

**B.** "**Insured**" as used in this Part means:

1. You or any **family member** for the ownership, maintenance or use of any auto or **trailer.**

2. Any person using **your covered auto.**

3. For **your covered auto**, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under 1. and 2. above.

4. For any auto or **trailer**, other than **your covered auto**, any other person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or **trailer.**

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an **insured:**

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in **bodily injury** or **property damage** covered under this policy. We are not obligated to apply for or furnish such bonds.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest on that part of the judgment we pay, accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part

of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $50 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

6. That portion of the attorney's fees awarded as costs under Alaska Civil Rule of Procedure 82 which does not exceed the amount allowed for a contested case in the schedule of attorney's fees contained in the Alaska Civil Rule of Procedure 82 computed using the limit of liability for Liability Coverage shown in the Declarations.

### EXCLUSIONS

**A.** We do not provide Liability Coverage for any **insured:**

1. Who intentionally causes **bodily injury** or **property damage.**

2. For **property damage** to property owned or being transported by that **insured.**

3. For **property damage** to property:

   a. rented to;

   b. used by; or

   c. in the care of;

   that **insured.**

   This exclusion (A.3.) does not apply to **property damage** to a residence or private garage.

4. For **bodily injury** to an employee of that **insured** during the course of employment. This exclusion (A.4.) does not apply to **bodily injury** to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that **insured's** liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the **business** or occupation of:

   a. selling;

   b. repairing;

4832X

**100036**



EXHIBIT 2
Page 14 of 31

c. servicing;

d. storing; or

e. parking;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of **your covered auto** by:

a. you;

b. any **family member;** or

c. any partner, agent or employee of you or any **family member.**

7. Maintaining or using any vehicle while that **insured** is employed or otherwise engaged in any **business** or occupation (other than farming or ranching) not described in Exclusion A.6. This exclusion (A.7.) does not apply to the maintenance or use of a:

a. private passenger auto;

b. pickup, van or motor home that:

(1) you own; or

(2) you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

(a) breakdown;

(b) repair;

(c) servicing;

(d) loss; or

(e) destruction; or

c. **trailer** used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that **insured** has permission to do so.

9. For **bodily injury** or **property damage** for which that **insured:**

a. is an insured under a nuclear energy liability policy; or

b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

a. American Nuclear Insurers;

b. Mutual Atomic Energy Liability Underwriters; or

c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

a. has fewer than four wheels; or

b. is designed mainly for use off public roads.

This exclusion (B.1.) does not apply:

a. while such vehicle is being used by an **insured** in a medical emergency; or

b. to any **trailer.**

2. Any vehicle, other than **your covered auto,** which is:

a. owned by you; or

b. furnished or available for your regular use.

3. Any vehicle, other than **your covered auto,** which is:

a. owned by any **family member;** or

b. furnished or available for the regular use of any **family member.**

However, this exclusion (B.3.) does not apply to you while you are maintaining or **occupying** any vehicle which is:

a. owned by a **family member;** or

b. furnished or available for the regular use of a **family member.**

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

a. competing in; or

b. practicing or preparing for;

any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. If the Declarations indicate **Individual Coverages** apply:

The limit of liability shown in the Declarations for "each person" for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one auto accident.

Subject to this limit for "each person," the limit of liability shown in the Declarations for "each accident" for Bodily Injury Liability is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability

EXHIBIT __2__
Page __15__ of __31__ 100037

is our maximum limit of liability for all **property damage** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

**B.** If the Declarations indicate **Combined Single Limits** apply:

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision will not change our total limit of liability.

**C.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part B or Part C of this policy.

**OUT OF STATE COVERAGE**

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret your policy for that accident as follows:

**A.** If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

**B.** No one will be entitled to duplicate payments for the same elements of loss.

**FINANCIAL RESPONSIBILITY**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

**OTHER INSURANCE**

**A.** If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

**B.** Any insurance we provide for a vehicle you do not own which is not a **rental vehicle** shall be excess over any other collectible insurance.

**C.** Any insurance we provide for a **rental vehicle** will be primary insurance, except such insurance will be excess over any coverage an **insured** purchases from the owner of the **rental vehicle**.

4033X

---

## PART B — MEDICAL PAYMENTS COVERAGE

**INSURING AGREEMENT**

**A.** We will pay necessary, usual and customary expenses incurred for necessary medical and funeral services because of **bodily injury:**

1. Caused by accident; and

2. Sustained by an **insured.**

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

**B.** "Insured" as used in this Part means:

1. You or any **family member:**

   a. while **occupying;** or

   b. as a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a **trailer** of any type.

   Also, you or any **family member** while **occupying** a bicycle when struck by a motor vehicle designed for use mainly on public roads or by a **trailer** of any type.

2. Any other person while **occupying your covered auto.**

3. Any other person while **occupying**, as a guest, an automobile not owned by you or a **family member**, while being operated by you or a **family member.**

— 4 —

EXHIBIT 2
Page 16 of 31   100038

## EXCLUSIONS

We do not provide Medical Payments Coverage for any **insured** for **bodily injury:**

1. Sustained while **occupying** any motorized vehicle having fewer than four wheels.

2. Sustained while **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while **occupying** any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the **bodily injury.**

5. Sustained while **occupying,** or when struck by, any vehicle (other than **your covered auto**) which is:

    a. owned by you; or

    b. furnished or available for your regular use.

6. Sustained while **occupying,** or when struck by, any vehicle (other than **your covered auto**) which is:

    a. owned by any **family member;** or

    b. furnished or available for the regular use of any **family member.**

    However, this exclusion (6.) does not apply to you.

7. Sustained while **occupying** a vehicle without a reasonable belief that that **insured** has permission to do so.

8. Sustained while **occupying** a vehicle when it is being used in the **business** or occupation of an **insured.** This exclusion (8.) does not apply to **bodily injury** sustained while **occupying** a:

    a. private passenger auto;

    b. pickup, van or motor home that you own; or

    c. **trailer** used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

    a. discharge of a nuclear weapon (even if accidental);

    b. war (declared or undeclared);

    c. civil war;

    d. insurrection; or

    e. rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. nuclear reaction;

    b. radiation; or

    c. radioactive contamination.

11. Sustained while **occupying** any vehicle located inside a facility designed for racing, for the purpose of:

    a. competing in; or

    b. practicing or preparing for;

    any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A or Part C of this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

**100039**

EXHIBIT 2
Page 17 of 31

## PART C — UNINSURED/UNDERINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** because of:

**1.** **Bodily injury** sustained by an **insured** and caused by an accident if the Declarations indicates that Uninsured/Underinsured Motorists Coverage Bodily Injury applies; and

**2.** **Property damage** caused by an accident, if the Declarations indicates that **property damage** Uninsured/Underinsured Motorists Coverage applies.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle** or **underinsured motor vehicle.**

We will pay damages under this coverage caused by an **underinsured motor vehicle** only if 1. and 2. below applies:

**1.** The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or

**2.** A tentative settlement has been made between an **insured** and the insurer of the **underinsured motor vehicle** and we:

**a.** have been given prompt written notice of such tentative settlement; and

**b.** advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

No judgment for damages arising out of a suit brought against the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** is binding on us unless we:

**1.** Received reasonable notice of the pendency of the suit resulting in the judgment; and

**2.** Had a reasonable opportunity to protect our interests in the suit.

**B.** In addition to our limit of liability for this coverage, we will pay attorney's fees which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** under Alaska Civil Rule of Procedure 82 computed using the limit of liability for Uninsured/Underinsured Motorists Coverage shown in the Declarations.

**C.** "**Insured**" as used in this Part means:

**1.** **You** or any **family member.**

**2.** Any other person **occupying your covered auto.**

**3.** Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in 1. or 2. above.

**D.** "**Property damage**," as used under this coverage, means damage to or destruction of **your covered auto.** However, **property damage** does not include loss of use of **your covered auto.**

**E.** "**Underinsured motor vehicle**" means a motor vehicle or trailer of any type licensed for highway use to which a liability bond or policy applies at the time of the accident but the limits of that bond or policy are not enough to pay the full amount the **insured** is legally entitled to recover as damages.

However, "**underinsured motor vehicle**" does not include any vehicle or equipment to which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

**1.** Denies coverage; or

**2.** Is or becomes insolvent.

**F.** "**Uninsured motor vehicle**" means a motor vehicle or trailer of any type:

**1.** To which no bodily injury liability bond or policy applies at the time of the accident.

**2.** Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

**a.** you or any **family member;**

**b.** a vehicle which you or any **family member** are **occupying;** or

**c.** **your covered auto.**

**3.** To which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:

**a.** denies coverage; or

**b.** is or becomes insolvent.

However, "**uninsured motor vehicle**" does not include any vehicle or equipment:

**1.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

**2.** Designed mainly for use off public roads while not on public roads.

**3.** While located for use as a residence or premises.

EXHIBIT 2
Page 18 of 31    100040

4D3-K

4. Owned by any governmental unit or agency unless the governmental unit or agency is or becomes insolvent.

## EXCLUSIONS

A. We do not provide Uninsured/Underinsured Motorists Coverage for **bodily injury** or **property damage** sustained by any **insured**:

1. While **occupying** or when struck by any motor vehicle owned by you or any **family member** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. If that **insured** or the legal representative settles the **bodily injury** or **property damage** claim without our consent. However, this exclusion (A.2.) does not apply:

   a. if such settlement does not prejudice our right to recover payment; or

   b. to damages an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle.**

3. Using a vehicle without a reasonable belief that that **insured** has permission to do so.

4. While **occupying** or operating an owned motorcycle or moped.

B. This coverage shall not apply directly or indirectly to benefit:

1. Any insurer or self-insurer under any of the following or similar law:

   a. workers' compensation law; or

   b. similar occupational or disability benefits law.

2. Any insurer of property.

## LIMIT OF LIABILITY

A. The limit of Bodily Injury Liability shown in the Declarations for "each person" for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one accident.

Subject to this limit for "each person," the limit of Bodily Injury Liability shown in the Declarations for "each accident" for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

The limit of liability shown in the Declarations for Uninsured/Underinsured Motorists Property Damage is our maximum limit of liability for all **property damage** sustained in any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. Subject to this maximum, our limit of liability will be the lesser of:

1. The difference between the amount of an **insured's** damages for **bodily injury** or **property damage** and the amount paid to that **insured** for such damages, by or for a person who is or may be held legally liable for damages, including all sums paid under Part A;

2. For **property damage** only:

   a. The amount necessary to repair or replace **your covered auto** with other property of like kind and quality;

   b. The actual cash value of **your covered auto;** or

3. The applicable limit of liability for this coverage.

C. Any amounts otherwise payable for damages under this coverage shall apply over and above any amounts available to the **insured** because of the **bodily injury:**

1. By or for a person who is or may be held legally liable for damages. This includes all sums paid under Part A.

2. Under any of the following:

   a. workers' compensation law; or

   b. automobile medical payments coverage.

D. In no event will an **insured** be entitled to receive duplicate payments for the same elements of loss.

E. No payment will be made for loss paid to the "insured" under Part **D** of this policy or any similar physical damage insurance under any other policy.

## OTHER INSURANCE

A. If there is other applicable uninsured/underinsured motorists coverage available under more than one provision of coverage when two or more vehicles are insured under this policy, any recovery for damages may equal but not exceed the highest applicable limit for any one vehicle under this policy. If there is other applicable uninsured/underinsured motorists



EXHIBIT 2 100041
Page 19 of 31

coverage available under any other policy, is-sued to you by us, any recovery for damages may equal but not exceed the highest limit of liability under any one policy.

**B.** If there is other applicable uninsured/underinsured motorists coverage available under more than one policy, the following priorities of recovery apply:

FIRST        A policy or coverage covering a motor vehicle occupied by the injured person or a policy or coverage covering a pedestrian as a named insured;

SECOND    A policy or coverage covering a motor vehicle occupied by the injured person as an insured other than as a named insured;

THIRD       A policy or coverage not covering a motor vehicle occupied by the injured person but covering the injured person as a named insured;

FOURTH   A policy or coverage not covering a motor vehicle occupied by the injured person but covering the injured person as an insured other than as a named insured.

We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all limits applicable to the same level of priority.

## ARBITRATION

If we and an **insured** do not agree:

1. Whether that **insured** is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that **insured**;

from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the **insured** is legally entitled to recover damages;

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for liability specified by the financial responsibility law of Alaska. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding; and

3. Who is responsible for payment of all expenses and fees, not including counsel fees or adjuster fees, incurred because of arbitration.

Each party will pay the counsel fees and adjuster fees it incurs.

## ADDITIONAL DUTIES

A person seeking Underinsured Motorists Coverage must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing of a tentative settlement between the **insured** and the insurer of the **underinsured motor vehicle** and allow us 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such **underinsured motor vehicle.**

---

## PART D — COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

**A.** We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto**, including its equipment, minus any applicable deductible shown in the Declarations.

We will pay for loss to **your covered auto** caused by:

1. Other than **collision** only if the Declarations indicate that Comprehensive Coverage is provided for that auto.

2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a **non-owned auto**, we will provide the broadest coverage applicable to any vehicle shown in the Declarations.

EXHIBIT ___2___
Page 20 of 31

100042

**B. "Collision"** means the upset of **your covered auto** or a **non-owned auto** or its impact with another vehicle or object. No deductible will apply if the collision is with another auto insured by either Safeco Insurance Company of America, Safeco Insurance Company of Illinois, Safeco National Insurance Company, Safeco Lloyds Insurance Company, First National Insurance Company of America or General Insurance Company of America.

**"Comprehensive"** means loss, other than **collision,** to **your covered auto** or a **non-owned auto.** Loss caused by the following are not **collision** losses but are **comprehensive** losses:

Loss caused by missiles or falling objects; fire; theft or larceny; explosion or earthquake; windstorm; hail, water or flood; malicious mischief or vandalism; riot or civil commotion; contact with a bird or animal; or breakage of glass.

If breakage of glass is caused by a **collision,** you may elect to have it considered a loss caused by **collision.**

**C. "Non-owned auto"** means:

1. Any private passenger auto, pickup, van or **trailer** not owned by or furnished or available for the regular use of you or any **family member** while in the custody of or being operated by you or any **family member;** or

2. Any auto or **trailer** you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. loss; or

   e. destruction.

**D. "Camper body"** means a body equipped as sleeping or living quarters which is designed to be mounted on a pickup.

## TRANSPORTATION EXPENSES

In addition we will pay, without application of a deductible, either of the following, whichever is greater:

1. Up to $22 per day, to a maximum of $660; or

2. The limit for loss of use, if any, shown on the Declarations;

For:

1. Temporary transportation expenses incurred by you in the event of the total theft of **your covered auto.** We will pay for such

expenses only if the Declarations indicate that Comprehensive Coverage is provided for that auto.

2. Indirect loss expenses for which you become legally responsible in the event of a loss to a **non-owned auto.** We will pay for indirect loss expenses if the loss is caused by:

   a. Other than **collision** only if the Declarations indicate that Comprehensive Coverage is provided for any **your covered auto.**

   b. **Collision** only if the Declarations indicate that Collision Coverage is provided for any **your covered auto.**

If the loss is caused by a total theft of **your covered auto** or a **non-owned auto,** we will pay only expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when **your covered auto** or the **non-owned auto,** is returned to use or we pay for its loss.

If the loss is caused by other than a total theft of a **non-owned auto,** we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace **your covered auto** or the **non-owned auto.**

## EXCLUSIONS

We will not pay for:

1. Loss to **your covered auto** or any **non-owned auto** which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. wear and tear;

   b. freezing;

   c. mechanical or electrical breakdown or failure; or

   d. road damage to tires.

   This exclusion (2.) does not apply if the damage results from the total theft of **your covered auto** or any **non-owned auto.**

3. Loss due to or as a consequence of:

   a. radioactive contamination;

   b. discharge of any nuclear weapon (even if accidental);

   c. war (declared or undeclared);

SA-4852/AKEP(12/03



EXHIBIT


EXHIBIT 2
Page 21 of 31

100043

**d.** civil war;

**e.** insurrection; or

**f.** rebellion or revolution.

**4.** Loss to:

**a.** any electronic equipment designed for the reproduction of sound, including, but not limited to:

   **(1)** radios and stereos;

   **(2)** tape decks; or

   **(3)** compact disc players;

**b.** any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:

   **(1)** citizens band radios;

   **(2)** telephones;

   **(3)** 2-way mobile radios;

   **(4)** scanning monitor receivers;

   **(5)** television monitor receivers;

   **(6)** video cassette recorders;

   **(7)** audio cassette recorders; or

   **(8)** personal computers;

**c.** tapes, records, discs, or other media used with equipment described in a. or b.; or

**d.** any other accessories used with equipment described in a. or b.

This exclusion (4.) does not apply to:

**a.** equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:

   **(1)** that equipment is permanently installed in **your covered auto** or any **non-owned auto;** or

   **(2)** the equipment is:

     **(a)** removable from a housing unit which is permanently installed in the auto;

     **(b)** designed to be solely operated by use of the power from the auto's electrical system; and

     **(c)** in or upon **your covered auto** or any **non-owned auto;**

   at the time of the loss.

**b.** any other electronic equipment that is:

   **(1)** necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

   **(2)** an integral part of the same unit housing any sound reproducing equipment described in a. and permanently installed in the opening of the dash or console of **your covered auto** or any **non-owned auto** normally used by the manufacturer for installation of a radio.

**5.** A total loss to **your covered auto** or any **non-owned auto** due to destruction or confiscation by governmental or civil authorities because you or any **family member:**

**a.** engaged in illegal activities; or

**b.** failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion (5.) does not apply to the interests of Loss Payees in **your covered auto.**

**6.** Loss to a **camper body,** motor home or **trailer** you own which is not shown in the Declarations. This exclusion (6.) does not apply to a **camper body,** motor home or **trailer** you:

**a.** acquire during the policy period; and

**b.** ask us to insure during the policy period or within 30 days after you become the owner, whichever is greater.

**7.** Loss to any **non-owned auto** when used by you or any **family member** without a reasonable belief that you or that **family member** have permission to do so.

**8.** Loss to equipment designed or used for the detection or location of radar or laser.

**9.** Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in the **business** of:

**a.** selling;

**b.** repairing;

**c.** servicing;

**d.** storing; or

**e.** parking;

vehicles designed for use on public highways. This includes road testing and delivery.

**10.** Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in any **business** not described in exclusion 9. This exclusion (10.) does not apply to the maintenance or use by you or any **family member** of a **non-owned auto** which is a private passenger auto or **trailer.**

EXHIBIT 2
Page 22 of 31
100044

11. Loss to **your covered auto** or any **non-owned auto,** located inside a facility designed for racing, for the purpose of:

    a. competing in; or

    b. practicing or preparing for;

any prearranged or organized racing or speed contest.

12. Loss to, or loss of use of, a **non-owned auto** rented by:

    a. you; or

    b. any **family member;**

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that **family member,** pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property;

2. Amount necessary to repair or replace the property; or

3. Limit of liability shown in the Declarations.

However, the most we will pay for loss to any **non-owned auto** which is a **trailer** is $1,000.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

C. No payment will be made under this coverage for loss paid under Property Damage Uninsured/Underinsured Motorists Coverage of this policy or any similar insurance under any other policy.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss:

1. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

2. Any insurance we provide with respect to a non-owned auto shall be excess over any other collectible source of recovery including, but not limited to:

    a. any coverage provided by the owner of the non-owned auto except a **rental vehicle;**

    b. any other applicable physical damage insurance;

    c. any other source of recovery applicable to the loss.

However, any insurance we provide for a **rental vehicle** will be primary insurance except any such insurance will be excess over any coverage an **insured** purchases from the owner or operator of the **rental vehicle.**

## APPRAISAL

A. If you and we fail to agree on the amount of loss, either may make written demand on the other for an appraisal of the loss. In this event, within 10 days of the demand, each party will choose a competent appraiser and will notify the other of the appraiser selected. The two appraisers will promptly choose a competent and impartial umpire. Not later than 15 days after the umpire has been chosen, unless this time period is extended by the umpire, each appraiser will separately state, in writing, the actual cash value and the amount of loss. If the appraisers submit a written report of an agreement on the actual cash value and the amount of loss to us, that agreement will be binding on you and us. If the appraisers fail to agree, they will promptly submit their differences to the umpire. A decision agreed to by one of the appraisers and the umpire will be binding on you and us.

Each party will:

1. Pay its own counsel and adjuster fees; and

2. Bear those other expenses and fees which are incurred as a result of the appraisal, either in entirety or proportionately, as determined by the umpire.

B. Neither you nor we waive any of our rights under this policy by agreeing to an appraisal.



EXHIBIT 2 100045
Page 23 of 31

## PART E — DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

    a. to physical examinations by physicians we select. We will pay for these exams.

    b. to examination under oath and subscribe the same. We may examine any **insured** separately and apart from the presence of any other **insured**. Such person has the right to have counsel present during any examination taken under oath.

4. Authorize us to obtain:

    a. medical reports; and

    b. other pertinent records.

5. Submit a proof of loss, under oath if requested, when required by us.

**C.** A person seeking Uninsured/Underinsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

**D.** A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect **your covered auto** or any **non-owned auto** and its equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if **your covered auto** or any **non-owned auto** is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F — GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

**A.** This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

**B.** The policy period is the period stated in the Declarations. The policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

**C.** The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

### BANKRUPTCY

Bankruptcy or insolvency of the **insured** shall not relieve us of any obligations under this policy.

### CHANGES

**A.** Before the end of any policy period, we may offer to change the coverage provided in this policy. Your payment of the premium billed by us for the next policy period will be your acceptance of our offer. However, if the renewal premium is increased more than 10 percent for a reason other than an increase in coverage or exposure base, or if after renewal there will be a material restriction or reduction in coverage not specifically requested by the insured, written notice shall be mailed by first class mail to the last known address of the insured to the insured and to the agent or broker of record, at least 20 days before expiration of a personal insurance policy. If notice before expiration of the policy is not given as required, the existing policy shall continue until we provide notice for the 20-day time period required.

**B.** This policy contains all the agreements between you and us. Its terms may not be

EXHIBIT 2
Page 24 of 31
100046

changed or waived except by endorsement issued by us.

**C.** If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

  **1.** The number, type or use classification of insured vehicles;

  **2.** Operators using insured vehicles;

  **3.** The place of principal garaging of insured vehicles;

  **4.** Coverage, deductible or limits.

If a change resulting from B. or C. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

**D.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (D.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

  **1.** A subsequent edition of your policy; or

  **2.** An Amendatory Endorsement.

**E.** Additional or return premium of $3.00 or less resulting from policy changes will be waived.

## FRAUD

We do not provide coverage for any **insured** who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

## LEGAL ACTION AGAINST US

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

  **1.** We agree in writing that the **insured** has an obligation to pay; or

  **2.** The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an **insured.**

## OUR RIGHT TO RECOVER PAYMENT

**A.** If we make a payment under this policy and the person to or for whom payment was made has

a right to recover damages from another we shall be subrogated to that right. That person shall do:

  **1.** Whatever is necessary to enable us to exercise our rights; and

  **2.** Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using **your covered auto** with a reasonable belief that that person has permission to do so.

Our rights do not apply under Paragraph A. with respect to damages caused by an accident with an **underinsured motor vehicle** if we:

  **1.** Have been given prompt written notice of a tentative settlement between an **insured** and the insurer of an **underinsured motor vehicle;** and

  **2.** Fail to advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification:

  **1.** That payment will be separate from any amount the **insured** is entitled to recover under the provisions of Uninsured/Underinsured Motorists Coverage; and

  **2.** We also have a right to recover the advanced payment.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

  **1.** Hold in trust for us the proceeds of the recovery; and

  **2.** Reimburse us to the extent of our payment.

**C.** With respect to Uninsured/Underinsured Motorists Coverage, we shall be entitled to a recovery under Paragraph **A.** or **B.** only after the person has been fully compensated for damages.

## TERMINATION

**A. Cancellation.** This policy may be canceled during the policy period as follows:

  **1.** The named insured shown in the Declarations may cancel by:

    **a.** returning this policy to us; or

    **b.** giving us advance written notice of the date cancellation is to take effect.

  **2.** We may cancel by mailing to the named insured shown in the Declarations at the address last know by us:

    **a.** at least 20 days notice:

      **(1)** if cancellation is for nonpayment of premium; or



EXHIBIT 2
Page 25 of 31   100047

(2) if cancellation is for the reasons as listed in paragraph 3.b. below; or

**b.** at least 30 days notice in all other cases.

**3.** After this policy is in effect for 60 days, or if this is a renewal policy, we will cancel only:

   **a.** for nonpayment of premium; or

   **b.** if your driver's license or motor vehicle registration or that of:

   (1) any driver who lives with you; or

   (2) any driver who customarily uses **your covered auto;**

   has been suspended or revoked. This must have occurred:

   (1) during the policy period; or

   (2) since the last anniversary of the original effective date if the policy period is other than 1 year.

   However, this Paragraph (b.) shall not apply to revocation of a driver's license of a person due to a non-driving related violation for consuming or possessing alcohol while under the age of 21.

**B. Nonrenewal.** If we decide not to renew this policy, we will mail notice to the named insured shown in the Declarations at the address last known by us. Notice will be mailed at least 20 days before the end of the policy period. Subject to this notice requirement, if the policy period is other than one year, we will have the right not to renew at each anniversary of the original effective date.

**C. Automatic Termination.** If we offer to renew and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on **your covered auto,** any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions.**

**1.** Proof of mailing of any notice shall be sufficient proof of notice.

**2.** If this policy is canceled, you may be entitled to a premium refund. If so, we will send you the refund. If we cancel, we will refund you the pro rata unearned premium. If you cancel, we will refund you the pro rata un-

earned premium minus a cancellation fee of 7.5% of the pro rata unearned premium.

However, we will not retain the cancellation fee if:

   **a.** you cancel this policy because:

   (1) you have disposed of **your covered auto,** and you insure another auto with us under a new policy, to become effective within 30 days of the effective date of cancellation of this policy; or

   (2) **your covered auto** has been repossessed under the terms of a financing agreement; or

   (3) you are entering the armed forces of the United States of America; or

   (4) **your covered auto** was stolen or destroyed, and you request cancellation:

   (a) within 30 days following the date **your covered auto** was stolen or destroyed; or

   (b) within 15 days of the time we determine **your covered auto** was destroyed, or if stolen, to be unrecoverable.

   **b.** you cancel this policy but there remains in force with us a policy in your name insuring another auto.

   **c.** this policy is written for a term of greater than one year and you cancel the policy after it has been in effect for one year.

**3.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

**1.** The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

**2.** The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto.**

**B.** Coverage will only be provided until the end of the policy period.

483X

EXHIBIT __3__ 100048
Page _26_ of _31_

**TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES**

If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto.

**LOSS PAYABLE CLAUSE**

As to the interest of the loss payee, this policy will remain in effect from the inception date and until ten days after cancellation notice is received by the loss payee. When we pay the loss payee we shall, to the extent of payment, have the loss payee's rights of recovery.

---

## ADDITIONAL COVERAGES

**AGREEMENT: WE WILL PROVIDE THE INSURANCE DESCRIBED IN EACH OF THE FOLLOWING ADDITIONAL COVERAGES ONLY IF INDICATED IN THE DECLARATIONS.**

---

### COVERAGE FOR DAMAGE TO A RENTAL VEHICLE — ALASKA

This coverage is subject to all the provisions of the policy, except as modified as follows:

**Insuring Agreement**

**A.** We will pay for direct and accidental loss to a **rental vehicle**, including its equipment, minus any applicable deductible shown in the Declarations. If loss to more than one **rental vehicle** results from the same **collision**, only the highest applicable deductible will apply. We will pay for loss to a **rental vehicle** caused by:

  **1.** Other than **collision** only if the Declarations indicate that Comprehensive Coverage for Damage to a Rental Vehicle is provided.

  **2.** **Collision** only if the Declarations indicate that Collision Coverage for Damage to a Rental Vehicle is provided.

**B.** "**Collision**" means the upset of a **rental vehicle** or its impact with another vehicle or object.

"**Comprehensive**" means loss, other than **collision**, to a **rental vehicle**. Loss caused by the following are not **collision** losses but are **comprehensive** losses:

Loss caused by missiles or falling objects; fire; theft or larceny; explosion or earthquake; windstorm; hail, water or flood; malicious mischief or vandalism; riot or civil commotion; contact with a bird or animal; or breakage of glass.

If breakage of glass is caused by a **collision**, you may elect to have it considered a loss caused by **collision**.

**C.** "**Rental vehicle**" means:

  **1.** A private passenger auto;

  **2.** A pickup or van; or

  **3.** A trailer;

rented by you or any **family member** from any person or organization licensed under applicable state laws to engage in the **business of** renting vehicles to the public while in the custody of or being operated by you or any **family member**. However, a **rental vehicle** does not include any vehicle rented for the regular use of you or any **family member**.

**Loss of Use Expenses**

**A.** In addition we will pay, without application of a deductible, up to $22 per day, to a maximum of $660, for loss of use expenses for which you become legally responsible in the event of loss to a **rental vehicle**.

**B.** This coverage applies only if:

  **1.** The **rental vehicle** is withdrawn from use for more than 24 hours; and

  **2.** The loss is covered under this coverage.

**C.** If the loss is caused by other than a total theft of a **rental vehicle**, our payment will be limited to that period of time reasonably required to repair or replace the **rental vehicle**.

**D.** If the loss is caused by a total theft of a **rental vehicle**, we will pay only expenses incurred during the period:

  **1.** Beginning 48 hours after the theft; and

  **2.** Ending when the **rental vehicle** is returned to use or we pay for its loss.

**Exclusions**

We will not pay for:

  **1.** Loss to any **rental vehicle** which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

  **2.** Damage due and confined to:

    **a.** wear and tear;

    **b.** freezing;

    **c.** mechanical or electrical breakdown or failure; or

    **d.** road damage to tires.

EXHIBIT 2  100049
Page 27 of 31

This exclusion (2.) does not apply if the damage results from the total theft of a **rental vehicle.**

3. Loss due to or as a consequence of:

   a. radioactive contamination;

   b. discharge of any nuclear weapon (even if accidental);

   c. war (declared or undeclared);

   d. civil war;

   e. insurrection; or

   f. rebellion or revolution.

4. Loss to:

   a. any electronic equipment designed for the reproduction of sound, including, but not limited to:

      (1) radios and stereos;

      (2) tape decks; or

      (3) compact disc players;

   b. any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:

      (1) citizens band radios;

      (2) telephones;

      (3) two-way mobile radios;

      (4) scanning monitor receivers;

      (5) television monitor receivers;

      (6) video cassette recorders;

      (7) audio cassette recorders; or

      (8) personal computers;

   c. tapes, records, discs, or other media used with equipment described in a. or b.; or

   d. any other accessories used with equipment described in a. or b.

This exclusion (4.) does not apply to:

   a. equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:

      (1) the equipment is permanently installed in a **rental vehicle;** or

      (2) the equipment is:

         (a) removable from a housing unit which is permanently installed in the **rental vehicle;**

         (b) designed to be solely operated by use of the power from the **rental vehicle's** electrical system; and

         (c) in or upon a **rental vehicle;**

      at the time of the loss.

   b. any other electronic equipment that is:

      (1) necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

      (2) an integral part of the same unit housing any sound reproducing equipment described in a. and permanently installed in the opening of the dash or console of a **rental vehicle** normally used by the manufacturer for installation of a radio.

5. A total loss to a **rental vehicle** due to destruction or confiscation by government or civil authorities because you or any **family member:**

   a. engaged in illegal activities; or

   b. failed to comply with Environmental Protection Agency or Department of Transportation standards.

6. Loss to:

   a. awnings or cabanas; or

   b. equipment designed to create additional living facilities.

7. Loss to equipment designed or used for the detection or location of radar or laser.

8. Loss to any **rental vehicle** being maintained or used by any person while employed or otherwise engaged in the **business** of:

   a. selling;

   b. repairing;

   c. servicing;

   d. storing; or

   e. parking;

   vehicles designed for use on public highways. This includes road testing and delivery.

9. Loss to any **rental vehicle** being maintained or used by any person while employed or otherwise engaged in any **business** not described in exclusion 9. This exclusion (10.) does not apply to the maintenance or use by you or any **family member** of a **rental vehicle** which is a private passenger auto or **trailer.**

10. Loss to a **rental vehicle,** located inside a facility designed for racing, for the purpose of:

    a. competing in; or

    b. practicing or preparing for;

    any prearranged or organized racing or speed contest.

EXHIBIT ___2___  100050
Page _28_ of _31_

**11.** Loss to, or loss of use of, a **rental vehicle** rented by:

    **a.** You; or

    **b.** Any **family member;**

if a rental company is precluded from recovering such loss or loss of use, from you or that **family member,** pursuant to the provisions of any applicable rental agreement or state law.

### Limit of Liability

**A.** Our limit of liability for loss will be the lesser of the:

    **1.** Actual cash value of the stolen or damaged property; or

    **2.** Amount necessary to repair or replace the property.

However, the most we will pay for loss to any **rental vehicle** which is a **trailer** is $1,000.

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

**C.** No payment will be made under this coverage for loss paid under Property Damage Uninsured/Underinsured Motorists Coverage of this policy or any similar insurance under any other policy.

### Payment of Loss

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

    **1.** You; or

    **2.** The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

### No Benefit to Bailee

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

### Other Sources of Recovery

**A.** If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

**B.** Any insurance we provide with respect to a **rental vehicle** shall be primary insurance except any such insurance shall be excess over any coverage an **insured** purchases from the owner of the **rental vehicle.**

### Appraisal

**A.** If you and we fail to agree on the amount of loss, either may make written demand upon the other for an appraisal of the loss. In this event, within 10 days of the demand, each party will choose a competent appraiser and will notify the other of the appraiser selected. The two appraisers will promptly choose a competent and impartial umpire. Not later than 15 days after the umpire has been chosen, unless this time period is extended by the umpire, each appraiser will separately state, in writing, the actual cash value and the amount of loss. If the appraisers submit a written report of an agreement on the actual cash value and the amount of loss to us, that agreement will be binding on you and us. If the appraisers fail to agree, they will promptly submit their differences to the umpire. A decision agreed to by one of the appraisers and the umpire will be binding on you and us.

Each party will:

    **1.** Pay its own counsel and adjuster fees; and

    **2.** Bear those other expenses and fees which are incurred as a result of the appraisal, either in entirety or proportionately, as determined by the umpire.

**B.** Neither you nor we waive any of our rights under this policy by agreeing to an appraisal.

### Termination of Coverage for Damage to a Rental Vehicle

    **1.** If you obtain Comprehensive Coverage under this policy or any other policy issued or delivered in Alaska on a vehicle owned by you, Comprehensive Coverage for Damage to a Rental Vehicle provided under this coverage will terminate on the effective date of the Comprehensive Coverage on the vehicle you own.

    **2.** If you obtain Collision Coverage under this policy or any other policy issued or delivered in Alaska on a vehicle owned by you, Collision Coverage for Damage to a Rental Vehicle provided under this coverage will terminate on the effective date of the Collision Coverage on the vehicle you own.



SA-1852/AKEP 12/03



EXHIBIT 2
Page 29 of 31    100051

## Part E — Duties After an Accident or Loss

Paragraph D. of Part E is replaced by the following for Coverage for Damage to a Rental Vehicle:

A person seeking Coverage for Damage to a Rental Vehicle must also:

1. Take reasonable steps after loss to protect the **rental vehicle** and its equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if the **rental vehicle** is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

---

## TOWING AND LABOR COSTS COVERAGE

We will pay reasonable expenses incurred each time **your covered auto** or a **non-owned auto** is disabled, for:

1. Towing to the nearest place where necessary repairs can be made during regular business hours if it will not run;

2. Towing it out if it is stuck on or next to a public street or highway;

3. Mechanical labor up to one hour at the place of its breakdown;

4. Change of tire; or

5. Delivery of gasoline, oil or loaned battery. We do not pay the cost of these items.

---

## LOSS OF USE COVERAGE

The provisions and exclusions that apply to Part D — Coverage for Damage to Your Auto also apply to this coverage except as changed below:

When there is a loss to any vehicle described in the Declarations for which a specific premium charge indicates that Loss of Use is afforded, we will reimburse you for expenses you incur to rent a substitute auto.

This coverage applies only if:

1. The auto is withdrawn from use for more than 24 hours;

2. The loss is caused by **collision**, or is covered by the Comprehensive Coverage of this policy; and

3. The loss exceeds the appropriate **collision** or **comprehensive** deductible applying to the auto.

However, this coverage does not apply to losses caused by **collision** if Collision Coverage does not apply to the auto.

Our payment will be limited to that period of time reasonably required to repair or replace the auto. We will pay up to the amount per day and the maximum shown for Loss of Use in the Declarations.

4940X

**100052**


EXHIBIT 2
Page 30 of 31

This policy has been signed by our President and Secretary.



Mike McGavick, President

C.B. Mead, Secretary



This policy includes copyrighted material of Insurance
Services Office, Inc. with its permission.

SA-1701/EP 9/90
G10

EXHIBIT  2   100053
Page 31 of 31