Law Offices of Elliott T. Dennis
1503 West 31st Avenue, Suite 201
Anchorage, AK 99503
Phone: 929-4890
Fax:    929-4891
Email: elliott@attorneydennis.com

Attorney for Zachary Putman

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY | ) | |
| OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  3:06-cv-00050-TMB |
| | ) | |
| ZACHARY PUTMAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*MEMORANDUM IN SUPPORT OF OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT*

I.  **INTRODUCTION**

Plaintiff, Safeco Insurance Company of Illinois (hereinafter Safeco), has brought this

declaratory action seeking a determination as a matter of law that liability insurance coverage under

auto insurance policy number H1841823 (hereafter Policy No. 2) was excluded as to claims asserted

by Zachary Putman (hereafter Putman) against its insureds Ivan S. Basargin and Poluheria Basargin

(hereafter Basargins) and their adult son, Vasily Basargin (hereinafter Vasily).  Putman, by way of

a counter-claim, is asking this court to confirm the existence of liability insurance coverage for the claims he asserted against the Basargins. Safeco has moved for summary judgment granting declaratory relief. Neither Safeco's complaint nor its summary judgment motion deny that the language in Policy No. 2 granted coverage to the Basargins. Instead, its sole argument focuses on exclusion of coverage pursuant to Exclusion B.2.

Putman has opposed Safeco's Motion for Summary Judgment and filed a Cross-Motion for Summary Judgment seeking declaratory relief. Specifically, he requests this court to confirm that the insurance agreement in Policy No. 2 provided protection to the Basargins for the claims he asserted against them and that the language of Exclusion B.2. is not effective to preclude coverage. Putman and Safeco both agree there are no genuine issues of material fact at issue here.

## II.  <u>STANDARD OF REVIEW</u>

Putman and Safeco are in agreement that this court should decide the insurance coverage issues presented here. This court has jurisdiction over the parties and the dispute pursuant 28 U.S.C. § 2201. A controversy exists between the parties and this is the type of controversy which requires a judicial resolution. Moreover, both of the parties have agreed to utilize this court as a forum for resolving the controversy. Finally, as stated by Safeco in its opening memorandum, the facts of this case bring it within the category of cases which have previously been resolved pursuant to 28 U.S.C. § 2201 and Rule 57 of the FRCP. Hence, Putman urges this court to exercise jurisdiction over the matters presented here and resolve this dispute.

This court is to apply the substantive insurance law of Alaska.[1]  The interpretation of whether an insurance contract provides coverage under certain circumstances is a matter for the court to resolve as a matter of law on a summary judgment motion.[2]

### III.    FACTUAL BACKGROUND

On July 6, 2005, Putman was lawfully operating his motorcycle through the intersection of Northern Lights Blvd. and Boniface Parkway in Anchorage, Alaska when he was hit by a 1992 Chevrolet pickup truck being driven by Vasily.[3]  Putman suffered severe permanent physical injuries from the collision.

The pickup being driven by Vasily was owned by his parents, the Basargins.  It was insured under Safeco auto liability Policy No. H1841365 (hereafter Policy No. 1). Vasily was not a named driver on that policy.

Safeco had also issued another policy to the Basargins, Policy No. 2.  Only one auto is listed

---

[1]*Allstate Ins. Co. v. Ellison*, 757 P.2d 1042, 1044 (Alaska 1985)

[2]*Jones v. Horace Mann Ins. Co.*, 937 P.2d 1360, 1361 (Alaska 1997); *Cox v. Progressive Casualty Ins. Co.*, 869, P.2d 467, 468 n1 (Alaska 1994)

[3]Vasily drove the pickup through the Boniface/Northern Lights Blvd. intersection at a high rate of speed traveling east in the westbound lane on Northern Lights Blvd.  After colliding with Putman he hit another vehicle at the intersection of Baxter Road and Northern Lights Blvd. before his vehicle was disabled. He then tried to drag a woman from her vehicle, presumably to take the vehicle, when he was subdued by citizens who witnessed the carnage. He was charged with: Assault in the First Degree; Assault in the Second Degree;  Assault in the Second Degree;  Robbery in the Second Degree; Leaving the Scene of an Accident; Leaving the Scene of an Accident; Leaving the Scene of An Accident; Driving Under the Influence and Driving While License Canceled, Suspended, Or Revoked.  (Exhibit A)  According to press reports he was sentenced to 14 years in prison for multiple counts of criminal conduct.

MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
Page 3
Memo Oppose SJ-Cross SJ (Case No. 3:06-cv-00050 -TMB)

on Policy No. 2's Declaration page, a 1996 Subaru Legacy. Other than listing different vehicles, Policy No. 1 and Policy No. 2 appear to be identical.

Putman filed a six count complaint in the State Superior Court on August 29, 2005, against Vasily and his parents. (Exhibit B). Count I alleges Vasily was negligence in operation of the vehicle. Count II alleges Vasily violated various statutes intended to provide for the safety of Putman and other motorist and, accordingly, he was negligent *per se*. Count III alleges Vasily engaged in outrageous conduct entitling Putman to a judgment for punitive damages against Vasily. Count IV alleges the Basargins were the owner of the vehicle operated by Vasily and their negligence was a proximate cause of the damages suffered by Putman. Count V alleges specifically that the Basargins breached their duty to exercise exclusive control over the pickup and this breach of their duty to secure their pickup was a proximate cause of Putman's injuries. Count VI alleges that Basargins allowed Vasily to operate the pickup though they knew or should have known he would do so in a negligent manner which would likely cause injuries to other motorist.

Safeco employed separate defense attorneys to represent Vasily and the Basargins. See their answers attached hereto as Exhibit C and D.

Safeco also investigated the accident facts, paying particular attention to how Vasily ended up behind the steering wheel of the pickup. Safeco took recorded statements from Ivan and Poluheria (Exhibit E and F) and hired Parker & Associates - Adjusters, John C. Parker, as an investigator. Parker prepared his investigative report (Exhibit G). The recorded statement transcripts and Parks' report were produced through discovery.

MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

On March 3, 2006, Safeco filed this action for Declaratory Relief against Vasily, the Basargins and Putman.  Its complaint explains that Safeco has issued two auto policies to the Basargins, Policy No. 1 and Policy No. 2, and that Putman had demanded payment of policy limits under both policies in settlement of his claims against Vasily and the Basargins.  Safeco claimed Exclusion K.2. in Policy No. 2 eliminated its obligation to provide coverage to the Basargins under Policy No. 2.

Putman, Safeco, Vasily, and the Basargins then entered into a Partial Settlement Agreement and Release of Claims.[4]  The underlying facts related to this incident are memorialized in that settlement agreement.  In addition, it memorializes Safeco's agreement to pay its policy limits under Policy No. 1 in order to obtain a release of liability for Vasily and the Basargins.  As additional consideration for Putman's release of the Basargins, they assigned him their rights to assert that Safeco Policy No. 2 applies to the liability claims which Putman was asserting against them in state court. Moreover, Safeco agreed that Putman could assert the Basargins' assigned claims against it in this action.  Finally, Safeco agreed to pay the liability limits of Policy No. 2  to Putman if this court concludes that liability insurance coverage provided under Safeco Policy No. 2 extended to the claims Putman asserted against Basargins in state court.

Thereafter, Safeco filed its Amended Complaint for Declaratory Relief, dropping all defendants except Putman.  Putman responded to Safeco's amended complaint with an Answer and

---

[4]Exhibit 5 to Safeco's Motion for Summary Judgment

MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
Page 5
Memo Oppose SJ-Cross SJ (Case No. 3:06-cv-00050 -TMB)

Counter-Claim for Declaratory Relief.

## IV.   ISSUES

1)    Does Policy No. 2 provide liability insurance coverage which would indemnify Basargins for any judgment entered against them on the state court claims asserted by Putman?

2)    Does Exclusion B.2. within Policy No. 2 eliminate coverage under Policy No. 2 for the state court claims asserted by Putman against the Basargins?

## V. DISCUSSION

A.    *Legal Standard for Interpreting Insurance Policies*

The Alaska Supreme has set forth rules of construction applicable to interpretation of insurance policies. *Allstate Insurance v. Teel*, 100 P.3d 2, 3-4 (Alaska 2004)

> We interpret insurance contracts by looking to (1) the language of the disputed provisions in the policy, (2) other provisions in the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions. n4  We construe grants of coverage broadly and interpret exclusions narrowly.   n5 We use the doctrine of reasonable expectations when reviewing the terms of an insurance policy.  n6 Under this doctrine, "the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though the painstaking study of the policy provisions would have negated those expectations."  n7
>
> n4 *Bering Strait Sch. Dist. v. RLI Ins. Co.,* 873 P.2d 1292, 1295 (Alaska 1994)
>
> n5 Id.
>
> n6 *West v. Umialik Ins. Co.,* 8 P.3d 1135, 1138 (Alaska 2000)
>
> n7 *C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1222 (Alaska

MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
Page 6

2000) (quoting *Bering Strait*, 873 P.2d at 1295)

B.    *The Applicable Policy Language*

The language at issue here is found in Part A - Liability Coverage, of Policy No. 2

and it states:

**PART A- LIABILITY COVERAGE**

**Insuring Agreement**

A.    We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an automobile accident. . . . (Emphasis in original)

B.    **"Insured"** as used in this Part means:

1.    You or any **family member** for the ownership, maintenance or use of any auto or **trailer**.

2.    Any person using **your covered auto.**

3.    For **your covered auto**, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under 1. and 2. above.

4.    For any auto or **trailer**, other than **your covered auto**, any other Person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own

MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
Page 7
Memo Oppose SJ-Cross SJ (Case No. 3:06-cv-00050 -TMB)

or hire the auto or **trailer.**

\* \* \* \* \*

The exclusionary language in Part A of the policy relied upon by Safeco states:

**EXCLUSIONS**

B.    We do not provide Liability Coverage for the ownership, maintenance or use of:

    1.    Any vehicle which:

        **a.** has fewer than four wheels; or
        **b.** is designed mainly for use off public roads.

        This exclusion (B.1.) does not apply:

        **a.** while such vehicle is being used by an **insured** in a medical emergency; or
        **b.** to any **trailer.**

    2.    Any vehicle, other than **your covered auto**, which is:

        **a**. owned by you; or
        **b.** furnished or available for your regular use.

    3.    Any vehicle, other than **your covered auto**, which is:

        **a.** Owned by any **family member**; or
        **b.** Furnished or available for the regular use of any **family member.**

        However, this exclusion (B.3.) does not apply to you while you are maintaining or **occupying** any vehicle which is:

<u>MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>
Page 8
Memo Oppose SJ-Cross SJ (Case No. 3:06-cv-00050 -TMB)

        **a.** owned by a **family member**; or
        **b.** furnished or available for the regular use
           of a **family member**.

4.     Any vehicle, located inside a facility designed for racing, for the purpose of:

        **a.** competing in; or
        **b.** practicing or preparing for;

any prearranged or organized racing or speed contest.

The "Definition" section of the policy includes paragraph "A" through "K". Paragraph K defines "your cover auto" as:

1.     Any vehicle shown in the Declarations.

2.     Any of the following types of vehicles on the date you become the owner, whether operational or not:

      **a.**    a private passenger auto;
      **b.**    a pickup or van that:

          **(1)**    has a Gross Vehicle Weight of less than 10,000 lbs; and

          **(2)**    is not used for the delivery or transportation of goods and materials unless such use is:

              **(a)** incidental to your **business** of installing, m a i n t a i n i n g   o r repairing   furnishings or equipment; or

              **(b)** for farming or ranching; or

<u>MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>

Page 9

**c.**     a motor home or **trailer**

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

This provision (K.2.) applies only if you ask us to insure the newly acquired vehicle during the policy period in which it was acquired or within thirty days after you become the owner, whichever is greater.

**3.**     Any **trailer** you own.

**4.**     Any auto or **trailer** you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

**a.**     breakdown;
**b.**     repair;
**c.**     servicing;
**d.**     loss; or
**e.**     destruction.

This provision (K.4.) does not apply to Coverage for Damage to Your Auto.

*C.*     *Analysis - The Insuring Agreement Grants Coverage for Putman's Claims*

The Basargins are the named insured on the policy.  Putman's state court complaint alleges they are liable for the damages he suffered as a result of the auto accident between their pickup and his motorcycle.  The basis of liability as pled in Putman's complaint is their general negligence (Count IV), their negligence in not exercising control over their pickup (Count V), and

MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
Page 10
Memo Oppose SJ-Cross SJ (Case No. 3:06-cv-00050 -TMB)

their negligent entrustment of the pickup to Vasily (Count VI).

Though the facts of the case were never fully developed through discovery, there is evidence of three different liability scenarios set forth in the recorded statement of Mr. and Mrs. Basargin, the report of John Parker, and the witness statement of Michael Buza.[5]

**Scenario No. 1**: Vasily took the vehicle from his parents' home without permission, but it was not reported as stolen before the accident.[6]  Because Vasily had no drivers license and had a history of other accidents, the Basargins were negligent in not reporting the missing vehicle in time for the accident to have been prevented.

**Scenario No. 2**: The Basargins failed to secure the key to the truck to prevent Vasily from exercising control over it because the sliding glass door to their apartment was not locked.  This facilitated Vasily's ability to take the truck without his parents' permission.[7]

**Scenario No. 3**: Finally, the parents allowed Vasily to drive the truck on a regular basis because it was seen at a construction site where Vasily and his brother worked and at their apartment.[8]  Based upon John Parker's investigation and the statement of Mike Buza, for whom Vasily worked several months before the accident, this is the most likely scenario.

---

[5] *See* Exhibit H

[6] *See* Exhibit F, page 6, statement of Poluheria Basargin

[7] *See* Exhibit F, pages 2, 6, statement of Poluheria Basargin

[8] *See* Exhibit G, page 11 Report of Investigator John Parker and Exhibit H, statement of Mike Buza.

The clear language of the Insuring Agreement states that Safeco agreed to, ". . . pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an automobile accident."  This sentence is as clear as any insurance policy language ever gets. It appears to clearly fit here; Putman suffered injuries from an automobile accident and there is both a factual and legal basis to claim Basargins are legally responsible for his damages.  Moreover, Insuring Agreement ¶ B.1. clearly identifies the Basargins as the insureds.  It is not even necessary to apply the principal that insurance policy language is to be broadly construed to find coverage because the clear language of the policy states that Safeco is agreeing to pay damages which the Basargins become legally responsible for because of an auto accident.

D.    *Analysis - Law and Policy Language Relevant to Excluding Coverage*

Though the language of the policy establishes coverage, but this leaves the question of whether coverage is eliminated by Exclusion B.2. as Safeco claims.

1.    *Law Applicable to Policy Interpretation*

In *C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1222 (Alaska 2000) the court said:

> The liability of an insurer is generally determined by the terms of the policy it has issued.  Where an insurance company by plain language limits the coverage of its policy, we recognize that restriction. (Citations and footnotes omitted)

This is the crux of the issue - Safeco's exclusionary language is not plain, clear or precise language.

The Alaska Supreme Court has stated repeatedly that an insurance policy is a contract of

MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
Page 12
Memo Oppose SJ-Cross SJ (Case No. 3:06-cv-00050 -TMB)

adhesion and because of that, "we construe it to give effect to the insured's reasonable expectations"[9] and, "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of the insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."[10]   Though construction of an insurance policy under the principal of reasonable expectations is <u>not</u> dependent on policy ambiguity, an insurance policy is ambiguous if it is reasonably susceptible to more than one interpretation.[11]   Under those circumstances the court accepts the interpretation most favorable to the insured.[12]   Moreover, the reasonable expectations of the parties are found in the language of the disputed policy provision, the language of other provisions in the policy, extrinsic evidence and case law interpreting similar provisions.[13]

      2.    *Finding the Insured's Reasonable Expectations*

      The Basargins' reasonable expectation based on the Insuring Agreement language ¶ "A" would be that if they were liable for damages resulting from an automobile accident,

---

[9]*C.P. ex rel. M.L. supra* at 1222; *Jones v. Horace Mann Ins. Co.*, 937 P.2d 1360, 1362 n3 (Alaska 1997)

[10]*C.P. ex rel. M.L. supra* at 1222 (quoting *Bering Straits Schl. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1295 (Alaska 1994)

[11]*C.P. ex rel. M.L. supra* at 1222 and *Stordahl v. Government Employees Ins. Co.* 564, P.2d 63, 66 (Alaska 1997)

[12]*C.P. ex rel. M.L. supra* at 1222

[13]*C.P. ex rel. M.L. supra* at 1223

they would be protected by Safeco.  The Insuring Agreement does not limit their protection only to accidents in which they are previously involved.

Exclusion B.2. relied upon by Safeco states, "We do not provide Liability Coverage for the ownership, maintenance or use of: . . ."  The term "Liability Coverage" is not defined.  What does "Liability Coverage for ownership, maintenance or use...." mean? Few lay persons will know what this language means or how it effects the protection which the insured purchased from Safeco, unless it is denied.  The term "Liability Coverage" is insurance jargon which has meaning to insurance and legal professionals, but not necessarily to reasonable lay people.  A more accurate term would be "liability insurance" or "insurance protection."

What Safeco means to say is that, "The liability insurance protection which we provide in this insurance policy will not pay for bodily injury or property damages for which any insured becomes legally responsible if those damages arise from the ownership, maintenance or use of any vehicle other than your covered auto:."  Unfortunately, Safeco does not say this.

In addition to lack of clarity in Exclusion B's introductory language (Liability Coverage), there is confusion in paragraph B.2.,

"Any vehicle, other than **your covered auto**, which is:

**a.** owned by you; or

**b.** furnished or available for your regular use."

To know the meaning of this language, the definition of "your covered auto" in ¶ K of "Definitions" must be analyzed.  Paragraph K.1. defining "your covered auto" says, "Any vehicle

MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
Page 14
Memo Oppose SJ-Cross SJ (Case No. 3:06-cv-00050 -TMB)

shown in the Declarations." Here is more insurance jargon, ". . . shown in the Declarations." "Shown" typically means presented for viewing. Does this mean either a vehicle or a picture of the vehicle will be presented for viewing?

The term "Declarations" is not defined and there is no reason for a lay person, even a reasonable intelligent one, to know "Declarations" means a page in this insurance policy.

Paragraph K.2. is no better at defining "your covered auto." It states:

* * * *

**2.**     Any of the following types of vehicles on the date you become the owner, whether operational or not:

    **a.**     a private passenger auto;
    **b.**     a pickup or van that:

        **(1)**     has a Gross Vehicle Weight of less than 10,000 lbs; and

        **(2)**     is not used for the delivery or transportation of goods and materials unless such use is:

            **(a)** incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

            **(b)** for farming or ranching; or

    **c.**     a motor home or **trailer**

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced.

MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

This provision (K.2.) applies only if you ask us to insure the newly acquired vehicle during the policy period in which it was acquired or within thirty days after you become the owner, whichever is greater.

Buried at the bottom of ¶ K.2. is the only language which, in the whole paragraph, which says what this paragraph is referring to - a newly acquired vehicle. If one only reads the language of K.2.b.(1) and (2)(a) and (b), the 1992 Chevy pickup would be defined as "your covered auto."

The reasonable expectation of the Safeco's insured are only met by the clear language of the insurance agreement - not the confusion of the exclusionary paragraph. If Safeco's exclusion was written with as much clarity as the Insuring Agreement, there could be little room for confusion or misunderstandings regardless of the nature of the underlying claims.

Here, the claims against the Basargins are found in Counts IV, V, and VI of the Putman's state court complaint and are based upon the factual scenarios 1, 2, and 3 supported by the extrinsic evidence. (Exhibits E, F, G, and H) The claims against the Basargins arise from decisions they made either in not reporting their stolen vehicle, not securing the key to the vehicle or in affirmatively entrusting the vehicle to Vasily. The claims are not based upon their use or maintenance of the pickup. The claim is only based upon Basargins' ownership to the extent they had the right to control it and make personal decisions not to exercise control.

E. *Other Language in the Policy*

Part A of Policy No. 2 sets out the Liability Coverage. Within that part are the

MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

following headings: Insuring Agreement; Supplemental Payments; Exclusions; Limit of Liability; Out of State Coverage; Financial Responsibility; and Other Insurance. In addition, the policy contains a section entitled, "Definitions."

The Exclusions section of the policy is longer than any other portion of Part A. It is broken into ¶ "A" with nine sub-paragraphs and multiple sub-sub-paragraphs under each of the numbered sub-paragraphs, and section "B" which is broken down into four sub-paragraphs with multiple parts under each of those sub-paragraphs.

Section "A" under Exclusions state, "We do not provide Liability Coverage for any **insured**: . . ." Set forth below this statement are the nine sub-categories. This clear introductory statement is easily understood, assuming the reader knows the meaning of Liability Coverage. Under ¶ "A", Safeco provides no Liability Coverage for any insured whose identity or position is described by sub-paragraphs 1 through 9. Because "Insured" is defined under ¶ "B" of the Insuring Agreement, the Basargins or any other Safeco insured similarly situated, would know that liability coverage was not afforded to them under any of the circumstances set forth in paragraphs 1 through 9. This clarity is in stark contrast to the introductory languages in ¶"B", as is discussed above.

Defendants argue that Exclusion B.2. eliminates coverage as to this accident because the pickup was not a "covered auto". However, the language in Exclusion B.2. directly conflicts with the language found under the Insuring Agreement section B.4. which states:

> B.      **"Insured** as used in this Part means:

* * * * *

MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
Page 17
Memo Oppose SJ-Cross SJ (Case No. 3:06-cv-00050 -TMB)

4.    <u>For any auto</u> or **trailer,** <u>other than **your covered auto**</u>, any other person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part.  This provision (B.4.) applies only if the person or organization does not own or hire the auto or **trailer**.  (Emphasis added)

The first line of this paragraph, read in conjunction with ¶ "A" of the Insuring Agreement, says Safeco will pay damages for which an insured becomes legally responsible even if that responsibility arises from "<u>any auto or trailer, other than your covered auto</u> . . ."

On the one hand, we have Exclusion B.2. which limits liability coverage to "your covered auto" and on the other hand, we have Insuring Agreement B.4. defining an insured as one having liability for damages related to "any auto . . . other than your covered auto. . . "  This constitutes ambiguity which has been defined as existing when the insurance contract, taken as a whole, is reasonably subject to differing interpretation.  And, when that happens the interpretation most favorable to the insured must be adopted by the court.[14]

F.    <u>*Case Law From Alaska*</u>

An additional factor this court is to consider in determining the reasonable expectation of the insured is the case law interpreting similar provisions to the disputed language.  There is no case law in Alaska interpreting the exclusionary language found in this policy.  There are two cases adverse to Putman's position which are called to this court's attention:  *Allstate Ins.*

---

[14]*C.P. ex rel. M.L. supra* at 1222

<u>MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>
Page 18
Memo Oppose SJ-Cross SJ (Case No. 3:06-cv-00050 -TMB)

*Co. v. Ellison*, 757 F.2d 1042 (9ᵗʰ Cir. 1985) and *Jones v. Horace Mann Ins. Co.*, 937 P.2d 1360 (Alaska 1997). Both of these cases contain exclusionary language with different and much clearer language than Safeco in Policy No. 2.

In *Ellison*, the 9ᵗʰ Circuit affirmed a decision by Judge Vonder Heydt, finding no coverage under a homeowner's insurance policy for a claim based upon negligent entrustment of an aircraft. The language found to be effective as an exclusion states, "We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of aircraft." *Supra* 1044. This language is dramatically clearer than Safeco's language. ("We do not provide liability coverage for ownership, maintenance or use of . . ."). Hence, neither the trial court nor the court of appeals encountered difficulty giving effect to the Allstate insurance policy exclusion.

In *Jones,* the Alaska Supreme Court affirmed the trial court's decision honoring the policy exclusion language. The exclusion language in *Jones* states: "This policy does not apply to liability: c. resulting from the ownership, maintenance, use, loading or unloading by an insured of motorized vehicles." *Supra* 1379. This language also is a model of clarity compared to Safeco's language.

G.    <u>Case Law Outside Alaska</u>

Outside Alaska the issue of excluding negligent entrustment claims under insurance policies have been widely litigated. There is a split of authority as to whether exclusion of coverage for negligent entrustment claims are enforceable. However, a significant majority of jurisdictions addressing the issue have found that policy exclusions which are clearly written are unambiguous

and thus are enforceable.  In *Standard Mutual Insurance Co. v. Bailey*, 868 F.2d 893, 898 (7th Cir.

1989) the court said:

> Our interpretation of Indiana law draws support from the holdings of
> numerous courts in other jurisdictions that have considered the issue
> in the context of similarly worded policy exclusions.  Of the thirty-
> one jurisdictions that have considered the question, twenty-eight in
> number have held the policy exclusion at issues applicable to claims
> of negligent entrustment.  Although several divergent theories have
> been employed by the various courts, the cases in which the court
> analyzes the tort of negligent entrustment, as we do here, present the
> most well reasoned and persuasive rationale for excluding a claim of
> negligent entrustment from the coverage of a liability insurance
> policy.  (Citations and footnotes omitted)

It is important to note that the exclusionary policy language being addressed by the court in *Bailey*

contains much greater clarity than the exclusion in the present case.  That policy language states,

"Coverage . . . [does] not apply to bodily injury or property damage: . . . e. arising out of the

ownership, maintenance, use, loading or unloading of: . . . (2) a motor vehicle owned or operated

by, or rented or loaned to any insured. . . ."  This policy language is more precise and clear than the

language utilized by Safeco in its policy before this court.

The court in *Bailey* commented on the jurisdiction which have followed the minority

position, disregarding coverage exclusions.  The court said at 899:

> There are a minority of jurisdictions holding the exclusion
> inapplicable to claims of negligent entrustment. . . .  In most
> instances, courts holding the exclusion inapplicable to negligent
> entrustment claims have concluded that the language of the exclusion
> is ambiguous and have construed the exclusion in favor of the
> insured.  (Citations and footnotes omitted)

MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY
JUDGMENT
Page 20
Memo Oppose SJ-Cross SJ (Case No. 3:06-cv-00050 -TMB)

The *Bailey* court also said at 901 n.9:

> Many of [the cases rejecting exclusion of negligent entrustment claims] are readily distinguishable from the present case. The most apparent distinction in most of these cases is the language of the exclusion itself. For example, in Huggins [v. *Tri-County Bonding Co.*, 337 S.E.2d 12 (W.Va. 1985), the most recent case holding a motor vehicle exclusion clause inapplicable to a negligent entrustment claim, the exclusionary clause in that case provided that the policy did not apply to "the ownership, maintenance, operation or use . . . of land motor vehicles." In holding that this language does not foreclose negligent entrustment claims, the West Virginia Supreme Court of Appeals specifically noted the policy's "lack of any expansive language such as used in other homeowners' policies where the language in the automobile exclusion contains the phrase 'arising out of the ownership, maintenance or use of the vehicle." *337 S.E.2d at 17*. Similarly, with the exception of the two Colorado cases – *Day* and *Douglass* – every other case holding the motor vehicle exclusion inapplicable to a negligent entrustment claim involved a policy provision lacking the "arising out of" language. We note as a matter of some significance that courts in Minnesota and New York, when presented with a policy exclusion containing the "arising out of language, held the "arising out of" exclusion applicable to a negligent entrustment claim. See *Fillmore 344 N.W. 2d at 879, Ruggerio, 484 N.Y.S.2d at 107*. (Emphasis added)

The Safeco exclusion does not contain the "arising out of" language. If the Exclusion B.2. said, "We do not provide insurance coverage for or protection from damages arising out of the ownership, maintenance, or use of any vehicle other than your automobile described or listed on the Declarations page of this insurance policy," Putman would not be arguing that Exclusion B.2. should be disregarded.

It is, without a doubt, permissible for insurance carriers to exclude liability insurance coverage for damages arising from certain circumstances. However, when exclusion of coverage

MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
Page 21
Memo Oppose SJ-Cross SJ (Case No. 3:06-cv-00050 -TMB)

is permitted, the language must be clear and unambiguous.  Where it is not clear and unambiguous the exclusionary language should be rejected and coverage found to exist.  This is required by Alaska law holding that insurance coverage provisions should be broadly construed, while exclusions are interpreted narrowly against the insurer.[15]

      *H.*     *Distinguishing Safeco's cited cases*

Safeco cites *Grange Ins. Assoc. v. Mackenzie*, 683 P.2d 221 (Wash. Ct. App. 1984) as an example of another jurisdiction that has upheld the validity of an exclusion like B.2.  *Grange,* however, can easily be distinguished.  In *Grange*, the court's opinion exclusively centered on interpretation of the terms "furnished for regular or frequent use."  *Id.* at 223.  The *Grange* opinion does not discuss the meaning of any other clause.  In fact, nothing in the opinion indicates the disputed policy language is similar to that contained in the Safeco Policy.

Not surprisingly then, the *Grange* Court found that there was no ambiguity in the policy. *Ibid.*  Notable though, when it reversed the trial court's grant of summary judgment for the insured, the *Grange* court unequivocally stated that "[b]road exclusions of coverage are permissible . . . *when the exclusion is spelled out for the policyholder in clear and unmistakable language.*"  *Ibid.*  In the instant case, the B.2. Exclusion, defined by K.2., contradicts the express terms found in ¶ B.4. of the Insuring Agreement.  This morass of conflicting detail is anything but "clear and unmistakable language."

---

[15]*Starry v. Horace Mann Ins. Co.*, 649 P.2d 937, 939 (Alaska 1982); *Hahn v. Alaska Title Guaranty Co.,* 557 P.2d 143, 144-45 (Alaska 1976).

The other case cited by Safeco, *Jarvis v. Aetna Casualty & Sur. Co.*, 633 P.2d 1359, 1360 (Alaska 1981), can also be distinguished.  There, the court addressed, *inter alia*, the question of whether the insured has a reasonable belief that coverage extended to them as named insureds.  *Id.* at 1360.  However, in *Jarvis*, there appeared no language comparable to Insuring Agreement ¶ B.4 as in the case at bar.  The policy at issue in *Jarvis* stated:

Persons Insured

Under the Liability and Medical Expense Coverages, the following are Insured:

(a) with respect to an owned automobile,

    (1) the named Insured,

    (2) any other person using such automobile with the permission of the named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

    (3) any other person or organization but only with respect to his or its liability because of acts or omissions of an Insured under (a) (1) or (2) above;

The *Jarvis* policy simply does not extend coverage to an insured, "For any auto or trailer, *other than your covered auto*," as B.4. of the Insuring Agreement does in the instant case.  Thus, the findings of fact and conclusions of law found in *Jarvis* are irrelevant to this case.

Finally, Safeco cites *The Automobile Ins. Co. of Hartford v. Curran*, 994 F.Supp 324 (E.D. Pa. 1998) for the proposition that there is no ambiguity in the Safeco policy language.  This case, relying on Pennsylvania law, says that, "[a] provision of an insurance policy is ambiguous if

MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
Page 23
Memo Oppose SJ-Cross SJ (Case No. 3:06-cv-00050 -TMB)

reasonably intelligent people on considering it in the context of the entire policy would honestly differ as to its meaning." at 329.

This appears to be a different and more strict standard of review than found in Alaska; "the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provision would have negated those expectations,"[16] and, "where a clause in an insurance policy is ambiguous in the sense that it is reasonably susceptible to more than one interpretation, we accept the interpretation that most favors the insured."[17] Hence, *Curran* provided little assistance in deciding this case.

## VI.   CONCLUSION

Insurance Policy No. 2, like all insurance polices, are contracts of adhesion. The Basargins had no ability to negotiate what was or was not covered. Accordingly, their reasonable expectations, and the reasonable expectations of Putman as an intended beneficiary of the insurance policy, must be honored.

The policy language clearly establishes coverage because all aspects of the clearly stated Insuring Agreement cover the facts of this matter. Only if coverage is excluded is there no coverage. The exclusionary language here is confusing. Moreover, when read in conjunction with Insuring Agreement B.4., it is ambiguous. Though a painstaking review and analysis of this insurance

---

[16]*C.P. ex rel. M.L. supra* at 1222

[17]*C.P. ex rel. M.L. supra* at 1222 and *Stordahl v. Gorvernment Employees Ins. Co.* 564, P.2d 63, 66 (Alaska 1997)

language by someone trained to engage in such an analysis, may lead to a different conclusion, a lay

person could justifiably conclude coverage for Putman's claims is afforded to them under Policy No.

2, particularly in light of the underlying facts.

Accordingly, it is requested that this court denies Safeco's Summary Judgment Motion and

grant Putman's Cross-Motion for Summary Judgment.

DATED this 28th day of July, 2006.

LAW OFFICES OF ELLIOTT T. DENNIS
Attorney for Plaintiff


By:    s/ Elliott T. Dennis_____
       Elliott T. Dennis, ABA #7610087
       1503 W. 31st Avenue, Suite 201
       Anchorage, Alaska 99503
       Phone: (907) 929-4890
       Fax:    (907) 929-4891
              elliott@attorneydennis.com


CERTIFICATE OF SERVICE

   I HEREBY CERTIFY  that  on this
 28th day of ___July_____, 2006,
a  true  and  correct  copy  of  the
foregoing was electronically served on
the following attorney:____

Gary A. Zipkin
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK 99501

By:____s/Elliott T. Dennis_____


MEMORANDUM  IN  SUPPORT  OF  OPPOSITION  TO  PLAINTIFF'S  MOTION  FOR
SUMMARY  JUDGMENT  AND  DEFENDANT'S  CROSS-MOTION  FOR  SUMMARY
JUDGMENT
Page 25
Memo Oppose SJ-Cross SJ (Case No. 3:06-cv-00050 -TMB)